In the Matter of INTERNATIONAL TEL-DATA CORPORATION, a Nevada corporation, Alleged Debtor.

**Bankruptcy No. BK–LV 79–768.**

United States Bankruptcy Court, D. Nevada.

July 24, 1981.

Edward S. Coleman, Las Vegas, Nev., for alleged debtor.

Robert D. Vannah, of Steffen, Simmons & Vannah, Las Vegas, Nev., for petitioning creditors.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Bankruptcy Judge.

Now before the Court for consideration is an involuntary petition under Chapter 7 of the Bankruptcy Code, filed on October 3, 1979. The Petitioning Creditor, Charles Pettis, is a judgment creditor of the Alleged Debtor, having a claim in the amount of $64,095. The Alleged Debtor, International Teldata Corporation ("ITC") opposes the petition on the ground that the jurisdictional requirements of 11 U.S.C. § 303 have not been satisfied.

The facts of this case are as follows: On September 4, 1979, the Petitioning Creditor

reduced to judgment an arbitration award he had previously received against ITC. Attempts to satisfy this judgment by execution failed, however, and Mr. Pettis found it necessary to file the instant involuntary bankruptcy petition against ITC. No other creditors have joined in this petition.

On the date the petition was filed, ITC had approximately twenty-two (22) creditors, including the Petitioner and two "insiders". With the exception of the latter three creditors, ITC's debts seem to have arisen as a result of its daily business affairs, being in the nature of monthly operating expenses.

Subsequent to the filing of the instant petition, ITC proceeded to satisfy all of its ongoing business debts, even though these had arisen prior to the filing of the said petition. Only the obligations owed to the Petitioning Creditor and to the aforementioned "insiders" then remained unpaid. A number of the creditors whose pre-petition claims were thus satisfied have, nevertheless, continued to provide goods and services to the Alleged Debtor, with the latter apparently incurring and repaying, on an ongoing basis, debts for such goods and services.

At a trial held on May 29, 1981, the Petitioning Creditor presented what it deemed to be its prima facie case. Thereafter, counsel for ITC made a motion to dismiss pursuant to F.R.Civ.P. Rule 41(b) and then rested his own case. In presenting this motion, counsel argued two grounds for dismissal: First, he asserted that ITC had more than twelve (12) creditors on the date of the filing of the involuntary petition in this case, thus requiring that two additional creditors have joined in that petition. Second, he maintained that even if the petition had been filed on behalf of three of its creditors, the Petitioning Creditor had not adequately demonstrated, in his case-in-chief that ITC was not generally paying its debts as such became due.

Section 303 of the Bankruptcy Code governs the commencement of involuntary cases under title 11. Subsection (b) of this section specifies the persons who may file an involuntary petition. Subsections (1) and (2) of 11 U.S.C. § 303(b) state as follows:

"(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is avoidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims. . . . "

Clearly, in order for one creditor to file an involuntary petition against his debtor, his claim must be unsecured and not contingent as to liability and there must be fewer than twelve (12) other such creditors. However, when determining the number of creditors of an alleged debtor, a court must exclude from its count, 1) insiders and 2) "any transferee of a transfer that is avoidable" by a trustee. See 2 Collier on Bankruptcy ¶ 303.05, at 303–18 (15th ed. 1980). With the latter consideration in mind, the Petitioning Creditor notes that section 549(a) of the Bankruptcy Code allows the trustee to avoid certain post-petition transfers of estate property, including transfers of type which seem to have occurred when the Alleged Debtor paid his various ongoing debts. The Alleged Debtor, however, observes that 11 U.S.C. § 549(b) places the following limitations upon these section 549(a) trustee avoidance powers:

"In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, *but not in-*

*cluding satisfaction or securing of a debt that arose before the commencement of the case,* given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has." (Emphasis supplied). Despite this exception, however, it is clear that transfers which occur during the gap period between the filing of an involuntary petition and the issuance of an order for relief in that case are avoidable if made in satisfaction of pre-petition obligations.

■ The Court finds that the transfers which occurred upon the post-petition repayment of the pre-petition debts owed by the Alleged Debtor are avoidable by the Trustee herein under 11 U.S.C. § 549. Therefore, those creditors who were repaid by the Alleged Debtor in this fashion cannot be counted in determining the number of petitioning creditors which are necessary under 11 U.S.C § 303(b). Similarly, the debts owed by the Alleged Debtor to its "insiders" cannot be counted in making this determination. This leaves the Petitioning Creditor as the only creditor eligible to be used to arrive at the number of creditors who must file under 11 U.S.C. § 303(b).

It is of little consequence that some of the creditors who were excluded under 11 U.S.C. § 549 have since extended the Alleged Debtor additional goods and services, for which they now await repayment. The fact that their pre-petition claims were satisfied after the filing of the present petition is determinative. They cannot be counted in ascertaining the total number of creditors of the Alleged Debtor. The instant petition was, therefore, properly filed in this regard.

The Court is now left to determine whether the Petitioning Creditor has established a satisfactory case to show that the Alleged Debtor was not generally paying his debts as such became due, on the date of the commencement of this case. *See* 11 U.S.C. § 303(h)(1) (West's Supp.1980). As to this issue, ITC argues that it was paying all of its debts as they came due, except for that owed to the Petitioning Creditor,

which it still disputed, despite the latter's judgment, and those amounts owed to its insiders.

■ It is evident to the Court that the obligation owed to the Petitioning Creditor was due at the time he commenced this case against the Alleged Debtor. Although an appeal had been taken from the Petitioning Creditor's judgment, there has been no showing made that this judgment was stayed during the pendency of that appeal. The question therefore raised by ITC is as to whether the nonpayment of a small number of relatively large debts, when coupled with the payment of all other smaller debts, should be deemed to constitute "generally not paying [a] debtor's debts as such become due." 11 U.S.C. § 303(h)(1) (West's Supp.1980). In the instant case, the amount owed to the Petitioning Creditor on the date of the filing of his involuntary petition represented some 52% of the total debts of the Alleged Debtor. Additionally, the amounts currently due the aforementioned insiders equal another 30% of ITC's debts. It was admitted by one of these insiders, Richard Candelaria, the President of ITC, that neither he nor the other insider, Charles Anshen, the Vice-President and General Counsel of ITC, were currently being paid under their respective obligations. Mr. Candelaria further noted that both he and Mr. Anshen had voluntarily agreed to defer payment under their notes and that the need for such a deferral was based upon ITC's inability to make payments on these debts. The Court, believes that such a deferral, when made by insiders, does not preclude the nonpayment of these debts from being considered in ascertaining whether an alleged debtor is generally paying its debts as such become due. *See In re All Media Properties, Inc.,* 5 B.R. 126, 147–48 (S.D.Tex.1980). Moreover, the statements of Mr. Candelaria lend credence to the arguments of the Petitioning Creditor that not only was the Alleged Debtor not paying its debts as such became due, but that it was *unable* to pay on at least its larger debts, in this fashion.

"As already mentioned, under § 303(h)(1) of the Code the bankruptcy court shall enter an order for relief against a debtor only where 'the debtor is generally not paying such debtor's debts as such debts become due; . . .' This phrase is not defined in the Code and the legislative history is not very helpful, but it seems reasonable to consider both the amount of the debt and the number of creditors not being paid in determining the answer to the issue.

" . . .

"[T]he court believes that generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of creditors. Also, the amount of the debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper."

*In re All Media Properties, Inc., supra* at 142–43 (footnote omitted).

In the present case, the Alleged Debtor has only three long-term obligations. The rest of its debts arise on a periodic basis and are relatively small in amount, when compared to its long-term debts. ITC appears to be able to pay only its periodic obligations. A significant question exists as to when, if ever, the Alleged Debtor will be able to make a payment to the Petitioning Creditor or to its own insiders. The Court believes that the instant situation fits the requirements of 11 U.S.C. § 303(h)(1) concerning the general nonpayment of debts. The Alleged Debtor's Motion to Dismiss must be denied and an Order for Relief entered in these proceedings.

The Court shall prepare an appropriate order. This Memorandum Opinion shall serve, for all purposes and pursuant to Federal Bankruptcy Rule 752, as the Findings of Fact and Conclusions of Law of the Court in this matter.