Jay M. WOLFF, David M. Bliss, Tim
Barber and Steve O'Brien,
Plaintiffs–Appellants,

v.

RARE MEDIUM, INC., ICC Technolo-
gies, Inc., now known as Rare Medi-
um Group, Inc., and Rare Medium
Texas I, Inc., Defendants–Appellees.

No. 02–7821.

United States Court of Appeals,
Second Circuit.

March 14, 2003.

Jeffrey M. Tollotson, Dallas, Texas (Adolfo R. Rodriguez, Jr., Lynn Tillotson & Pinker, Dallas, TX; Jonathan Young, Andrew L. Morrison, Andrew B. Messite, Reed Smith LLP, New York, NY, on the brief), for Plaintiffs–Appellants.

Barry G. Scher, New York, N.Y. (Allana F. Stark, Fried, Frank, Harris, Shriver & Jacobson, New York, NY) for Defendants–Appellees.

PRESENT: STRAUB, KATZMANN, and RAGGI, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

———— **At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 14th day of March, Two Thousand and Three.**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the district court granting dismissal in favor of defendants-appellees Rare Medium, Inc., ICC Technologies, Inc., now known as Rare Medium Group, Inc., and Rare Medium Texas I, Inc., is hereby AFFIRMED.

Plaintiffs-appellants Jay M. Wolff, David M. Bliss, Tim Barber, and Steve O'Brien (collectively, "plaintiffs") appeal from the order of the district court entered June 28, 2002, and amended on July 23, 2002, dismissing plaintiffs' amended complaint against Rare Medium, its majority shareholder ICC Technologies, Inc., now known as Rare Medium Group, and its subsidiary Rare Medium Texas I, Inc. (collectively, "Rare Medium") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Wolff v. Rare Medium, Inc.,* 210 F.Supp.2d 490 (S.D.N.Y.2002); *see also Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 354 (S.D.N.Y.2001) (dismissing plaintiffs' initial complaint with leave to replead).

We review *de novo* the district court's dismissal of plaintiffs' amended complaint, and will affirm only if "it appears beyond doubt" that plaintiffs "can prove no set of facts" that would entitle them to relief. *Phillip v. University of Rochester,* 316 F.3d 291, 293 (2d Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). We presume all facts pleaded in plaintiffs' complaint to be true and draw all reasonable inferences in their favor. *See EEOC v. Staten Island Savings Bank,* 207 F.3d 144, 148 (2d Cir. 2000).

■ This dispute arises in the context of an agreement effective April 14, 1999 ("Acquisition Agreement") between the parties whereby plaintiffs exchanged their controlling interests in Big Hand, Inc., a web site

development and consulting company, for 1.2 million shares of restricted Rare Medium stock (the "exchanged shares"). The stock restrictions relevant to this appeal are detailed in Article IV, section 4.4 of the Acquisition Agreement and relate to a period of time twelve-to-eighteen months after the effective date of the merger. During that six-month interval, plaintiffs were prohibited from selling or entering into any transaction on the public market with respect to their exchanged shares. *See* Amended Complaint at ¶ 21. Neither could they engage in any private sale or transfer of their exchanged shares without first obtaining the transferee's written consent to certain conditions. *Id.* at ¶ 23. Further, Article IV, section 4.4(b) of the Acquisition Agreement required each exchanged share certificate to bear a legend referencing these restrictions.

In mid-April 2000, plaintiffs entered into brokerage agreements with Morgan Stanley, providing for "collars" to be placed on their exchanged shares. Soon thereafter, when Morgan Stanley contacted Rare Medium to request the transfer of plaintiffs' shares to "street name" to facilitate the collaring efforts, Rare Medium is alleged, *inter alia*, to have (1) fraudulently misrepresented that such transactions were not permitted under the Acquisition Agreement, (2) further misrepresented that it would endeavor to block the collaring transactions "telling and implying" that it would sue Morgan Stanley if the brokerage firm took the proposed actions, and (3) generally refused to cooperate with the request to put the certificates in "street name." *Id.* at ¶ 38. As a result, Morgan Stanley refused to collar plaintiffs' exchanged shares, thereby breaching its obligation under the brokerage agreements. Plaintiffs allege that Rare Medium's intentional misrepresentations to Morgan Stanley constituted a breach of Article IV, section 4.4(a) of the Acquisition Agreement,

as well as a tortious interference with both plaintiffs' brokerage agreement and its prospective business relationship with Morgan Stanley.

To state a valid claim for breach of contract under New York law, plaintiffs must plead (1) the existence of a contract, (2) performance by plaintiffs, (3) a breach by Rare Medium, and (3) ensuing damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir.2000). Although the Acquisition Agreement plainly satisfies the contract requirement, plaintiffs' identification of Article IV, section 4.4(a) as the provision breached by Rare Medium is deficient as a matter of law because the plain language of that section imposes no obligations on Rare Medium; it serves only to restrict plaintiffs' disposition of their exchanged shares. *See id.* (rejecting claim of breach based on alleged guaranty obligation where "Agreement contains no language that would require [defendants] to answer directly to [plaintiff] for the Company's default"); *Ehag Eisenbahn-werte Holding Aktiengesellschaft v. Banca Nationala a Romaniei*, 306 N.Y. 242, 249, 117 N.E.2d 346 (1954) (vacating attachment based on breach of contract where agreement "clearly establish[ed] that no duty was imposed upon, or assumed by [defendants]").

Plaintiffs nevertheless submit that Rare Medium's communications with Morgan Stanley breached an implicit contract duty of good faith not to deprive plaintiff of their right to dispose of Rare Medium stock except as limited by Article IV, section 4.4(a). *Cf. Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 697 N.Y.S.2d 128 (2d Dep't 1999) (recognizing that breach of good faith can be based on defendant's efforts to deprive plaintiff of the benefit of the bargain, but finding claim insufficiently pleaded to survive dismissal motion). Under

New York law, a duty of good faith and fair dealing is implicit in every contract, but only in connection with rights or obligations originating in the contract. *See Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992) (holding that lack of an express obligation by defendant to approve letters of credit precluded claim for breach of good faith and fair dealing); *see also Chemical Bank v. Stahl,* 272 A.D.2d 1, 712 N.Y.S.2d 452, 462 (1st Dept.2000) (duty of fair dealing requires one party to a contract to reasonably cooperate in the other's performance of its obligations). The Acquisition Agreement confers no disposition rights on plaintiffs. Rather, Article IV, section 4.4 confers benefits only on Rare Medium by restricting plaintiffs from engaging in a variety of stock transactions that would otherwise be permitted by law. *See generally Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d at 1056 (holding that duty of good faith with respect to existing letters of credit could not support an inferred duty to apply a particular standard in evaluating applications for further credit). Certainly, had plaintiffs been paid in unrestricted stock, i.e., had Article IV, Section 4.4(a) not been included in the Acquisition Agreement, plaintiffs' right to dispose of their exchanged shares as they saw fit would not derive from any contract provision but simply from state property law. Any interference with those property rights causing injury would sound in tort, not contract. In sum, we agree with the district court that plaintiffs' claim for breach of contract must be dismissed pursuant to Rule 12(b)(6).

█ Plaintiffs' tort claims are similarly deficient. To state a claim for tortious interference with contract under New York law, plaintiffs must plead (1) the existence of a contract between themselves and a third party, (2) Rare Medium's knowledge of that contract, (3) Rare Medium's intentional, unjustified procurement of a breach of the third-party contract, and (4) ensuing damages. *See Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82, 668 N.E.2d 1370 (1996). To plead tortious interference with a prospective business relationship, plaintiffs must allege (1) a prospective business relationship with a third party, (2) Rare Medium's interference with that relationship, (3) Rare Medium's singular intent to harm plaintiff or its use of dishonest, unfair, or improper means, and (4) ensuing injury to the relationship. *See Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir.1994) (and cases cited therein).

Notice pleading under Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint cannot be dismissed on the ground that it is conclusory or fails to allege specific facts, it must nevertheless plead at least the minimum facts necessary to give defendant fair notice of the grounds on which a claim depends. *See Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002); *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002).

Because plaintiffs acknowledge that their exchanged shares were restricted by the Acquisition Agreement, their tortious interference claims depend, at a minimum, on the proposed Morgan Stanley transactions comporting with these restrictions. Otherwise, Rare Medium's opposition would not be "unjustified," much less "dishonest, unfair, or improper." In their pleadings, plaintiffs identify "collaring," as a permissible transaction under the Acquisition Agreement. Amended Complaint at ¶ 51. Collaring, however, does not reference a defined financial transaction. As plaintiffs themselves acknowledge, it is simply "an industry term whereby the

owner of the stock 'locks in' a price range for the stock and thus guarantees profit within that range." *Id.* at ¶ 28. In short, it is an end, not a means, which can encompass a wide range of complex transactions, usually built around a series of stock "puts" and "calls," all carefully structured and secured to protect a stockholder from the risks of a declining market. *See, e.g.,* Daniel Gross, *How to Salvage a Portfolio,* N.Y. Times, Apr. 8, 2001, Sec.6, p. 75. Whether plaintiffs' collaring arrangement with Morgan Stanley was permitted under the Acquisition Agreement and whether Rare Medium's opposition was therefore tortious depends on the specific vehicles Morgan Stanley proposed to tailor plaintiffs' collars. Without some notice of the nature of these transactions, Rare Medium cannot answer the claim that its opposition was unjustified, dishonest, unfair, or improper.

Plaintiffs have elected not to plead any such transactions in their complaint, despite being encouraged to do so by the district court. *See Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d at 359 (highlighting plaintiffs' failure to plead any allegations regarding "rights and obligations" under the Morgan Stanley contract in dismissing the initial complaint and granting leave to replead). Instead, they have opted to plead in the negative, describing only what their collaring efforts would not entail. Thus, in their initial complaint, plaintiffs stated simply that their collaring arrangement with Morgan Stanley would not require a "sale" of their exchanged shares. Complaint ¶ 31. In their amended complaint, plaintiffs added that collaring would not require them to "transfer" their exchanged shares. Amended Complaint at ¶ 29. The problem with these pleadings is that they referenced only two of the restrictions imposed by the Acquisition Agreement. Nowhere did plaintiffs plead that their collaring efforts would not violate the public-market-transaction restriction of Article IV, section 4.4(a). Neither did they indicate that their shares could be placed in "street name" without disturbing the restrictive legends required by Article IV, section 4.4(b).

These narrowly framed pleadings, even when liberally construed, fail to allege the bare facts necessary to support a claim that Rare Medium was "unjustified" or "dishonest, unfair, or improper" in opposing Morgan Stanley's efforts to collar the exchanged shares. We conclude that the district court correctly dismissed the claims for tortious interference pursuant to Rule 12(b)(6).

The judgment of the district court is hereby AFFIRMED.