Honorable Mike K. Nakagawa, United States Bankruptcy Judge
On July 20, 2017, the court heard the Motion to Dismiss Involuntary Petition, or, in the Alternative, to Abstain, and Reservation of Rights Under 11 U.S.C. § 303(i) ("Dismissal Motion"), brought by EB Holdings II, Inc.[2] The appearances of *707 counsel were noted on the record. After arguments were presented, the matter was taken under submission.[3]
BACKGROUND
In addition to the above-captioned involuntary bankruptcy proceeding, the Dismissal Motion concerns two civil proceedings pending in the Eighth Judicial District Court for the State of Nevada in Clark County, Nevada ("State Court"). The apparent overlap between the parties to this involuntary bankruptcy proceeding and the two civil proceedings in State Court is described below.
1. The Involuntary Bankruptcy Proceeding.
On May 18, 2017, an involuntary petition under Chapter 11 (ECF No. 1) was filed against EBH.[4] The involuntary petition ("Petition")[5] was filed on behalf of seven entities: (1) GLAS in its capacity as Administrative Agent on behalf of each of the "PIK Lenders,"[6] (2) GoldenTree Master Fund, Ltd. ("GoldenTree"), (3) Kneiff Tower SARL, (4) Mount Kellett Master Fund II-A, LP, (5) Grace Bay III Holdings S.a.r.l., (6) Arvo Investment Holdings S.a.r.l., and (7) Sound Point Montauk Fund, L.P. (collectively "Petitioning Creditors"). The Petition follows Bankruptcy Official Form 205, and Part 3, at Paragraph 11, alleges that "The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount."
On May 19, 2017, a summons was issued by this court requiring EBH to respond to *708 the Petition within 21 days after service. The summons also indicated that an initial status conference had been scheduled for June 21, 2017. (ECF No. 55). On May 24, 2017, an order was entered approving a stipulation to continue the initial status conference to June 27, 2017. (ECF No. 67).
On June 9, 2017, EBH timely responded to the Petition by filing the instant Dismissal Motion. (ECF No. 73). The request for judicial notice accompanying the motion includes thirty-two separate exhibits. Those exhibits consist entirely of papers filed in connection with the previously mentioned civil actions pending in State Court.[7] A hearing on the Dismissal Motion was noticed to be held on July 20, 2017. (ECF No. 75). The motion requests this bankruptcy court to terminate this involuntary bankruptcy case by dismissing the Petition. In the alternative, the motion requests that this bankruptcy court abstain from further proceedings on the Petition to permit the completion of the State Court Litigation.
On June 22, 2017, an opposition to the Dismissal Motion was filed on behalf of GLAS ("GLAS Opposition"). (ECF No. 81).[8]
On June 26, 2017, an opposition to the Dismissal Motion also was filed on behalf of the "PIK Lender Group." (ECF No. 89). The request for judicial notice accompanying that opposition ("PIK Lender Opposition") includes three exhibits.
On June 27, 2017, this court entered an order approving a stipulation granting relief from the automatic stay to permit all of the parties in the coordinated civil actions to continue with the State Court Litigation, including any appeals. (ECF No. 97).[9]
*709 On July 6, 2017, a "Limited Statement of LEG Q LLC in Support of Involuntary Chapter 11 Petition under Section 303 of the Bankruptcy Code" ("LEG Statement") was filed by an entity described as LEG Q LLC ("LEG").[10] (ECF No. 106).[11]
On July 13, 2017, EBH filed a consolidated reply ("EBH Reply").[12] (ECF No. 111).[13]
*710 2. The State Court Proceedings.
On August 26, 2016, the GoldenTree Action was commenced.[14] On October 24, 2016, the EBH Action was commenced. Although the GoldenTree Action was commenced before the EBH Action, certain rulings by the State Court require that the actions be viewed in reverse order.
a. The EBH Action.
The initial complaint in the EBH Action asserted claims against the various PIK Lender defendants in the form of four separate causes of action: (1) a declaration that improper acceleration of the PIK Loan results in cancellation,[15] (2) promissory fraud with respect to modification of the PIK Loan Agreement, (3) breach of the acceleration[16] provision of the PIK Loan Agreement, and (4) breach of the waiver[17] and "no-action"[18] clauses contained in the *711 PIK Loan Agreement. (RJN-EBH Ex. 15). There are thirteen defendants named in the complaint ("EBH Complaint").
On December 14, 2016, in response to the EBH Complaint, the GoldenTree Parties filed a special motion to dismiss under NRS 41.660 ("GoldenTree Special Motion"). (Supp. RJN-EBH Ex. 33). The special motion alleged that commencement of the EBH Action violated NRS 41.660.[19] The GoldenTree Parties asserted that the commencement of the EBH Action violated the "anti-SLAPP"[20] protections of the aforementioned Nevada statute.[21]
On February 2, 2017, the State Court entered an order denying the GoldenTree Special Motion ("EBH Special Order"). (RJN-EBH Ex. 18). In that order, the State Court found that "Defendants did not meet their burden on the Special Motion to Dismiss." EBH Special Order at 2:25-26. The order further stated that "In addition, the Court finds genuine issues of material fact that preclude granting the Special Motion to Dismiss." Id. at 2:26-27.[22]
*712 On February 7, 2017, the GoldenTree Parties filed a notice appealing the EBH Special Order to the Nevada Supreme Court. (RJN-EBH Ex. 30).[23]
b. The GoldenTree Action.
The Amended Complaint in the GoldenTree Action was filed by thirteen plaintiffs and asserted claims against six named defendants on the following legal theories: (1) fraudulent inducement, (2) breach of fiduciary duty, (3) aiding and abetting breach of fiduciary duty, (4) breach of contract,[24] (5) racketeering, (6) actual fraudulent transfer,[25] (7) constructive fraudulent transfer,[26] (8) transfer made by insolvent,[27] and (9) alter ego/piercing the corporate veil. The named defendants filed various motions to dismiss the Amended Complaint.
On December 23, 2016, after the State Court adjudicated various other motions to dismiss, the GoldenTree Plaintiffs filed a second amended complaint ("Second *713 Amended Complaint")[28] asserting the same legal theories as the Amended Complaint. (RJN-EBH Ex. 11).[29] Eco-Bat, Quexco, and RSR are named as "relevant parties" but no longer as defendants in the GoldenTree Action. See Second Amended Complaint at ¶¶ 31, 32, and 33.
On January 13, 2017, EBH filed its answer to the Second Amended Complaint that included the EBH Counterclaim. The counterclaim and third-party complaint alleges substantially the same four causes of action asserted in the EBH Action, but also includes a fifth cause of action alleging that the GoldenTree Plaintiffs have intentionally interfered with EBH's contractual relations to other PIK Lenders.[30] There are thirty counter-defendants and third-party defendants named by EBH in its counterclaim and third-party complaint.
On March 17, 2017, the GoldenTree Plaintiffs, counterclaim defendants, and third party defendants, filed a special motion to dismiss the EBH Counterclaim under NRS 41.660 ("Golden Tree EBH Special Motion"). (Supp. RJN-EBH Ex. 34).[31]
On April 17, 2017, the State Court entered an order approving the parties' stipulation *714 that the rulings entered in connection with the GoldenTree Special Motion apply with equal force to the EBH Counterclaim, except as to the fifth cause of action. (RJN-EBH Ex. 20).[32]
On April 25, 2017, the State Court conducted a hearing on the Golden Tree EBH Special Motion consistent with its April 17 Order.
On May 15, 2017, the State Court entered an order denying the Golden Tree EBH Special Motion with respect to the counterclaim and third party complaint ("GoldenTree Special Order"). (RJN-EBH Ex. 21). In that order, the State Court found that "[T]he Moving Parties have not established, at this time, by a preponderance of the evidence that the Claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Golden Tree Special Order at 3:12-14 (emphasis added). The order further stated that as a result, "[T]he Court cannot, at this time, find that the Moving Parties have met their burden under NRS 41.660(3)(a)." Id. at 3:14-16. Moreover, the order denying the special motion to dismiss states as follows: "Alternatively, even assuming for the sake of argument that the Moving Parties met their burden, the non-moving party, EB Holdings, has demonstrated with prima facie evidence the probability of prevailing on its Claim. Therefore, the Court finds that EB Holdings met its burden under NRS 41.660(3)(b)." Id. at 3:17-20.[33] The order concludes by permitting discovery to proceed unabated.[34]
On May 15, 2017, the GoldenTree Plaintiffs filed a motion for leave to file a third amended complaint ("Third Amended Complaint") to include a substantial number of additional plaintiffs that allegedly hold an interest in the PIK Loan. (RJN-EBH Exs. 13 and 14).[35] The proposed *715 Third Amended Complaint asserts the same legal theories as the prior complaints. The breach of contract cause of action, however, alleges an additional event of default under Section 4.01(b) of the Annex to the PIK Loan. See Third Amended Complaint at ¶ 178. The alleged additional event of default is the failure to pay the outstanding amount by March 31, 2017, i.e., the maturity date of the PIK Loan.[36] The increased number of GoldenTree Plaintiffs allege that the "entire amount of the loan outstanding is immediately due and payable by EB Holdings." Third Amended Complaint at ¶ 179. They further allege that they have been damaged "in an amount in excess of $10,000 based on their €1.373 billion in holdings, as of March 31, 2017, of the approximately €1.8 billion outstanding under the PIK Loan Agreement as of March 31, 2017." Id. at ¶ 181.[37]
On May 18, 2017, the GoldenTree Plaintiffs filed a notice appealing the Golden Tree Special Order to the Nevada Supreme Court. (RJN-EBH 31). On the same date, some of the GoldenTree Plaintiffs joined in filing the involuntary Petition.
3. The Overlapping Parties.
As discussed above, there are seven Petitioning Creditors in this involuntary Chapter 11 proceeding, twenty-eight proposed plaintiffs in the GoldenTree Action, thirty counter-defendants and third-party defendants alleged in the EBH Counterclaim, thirteen defendants named in the EB Action, and apparently fifty-five parties who have participation interests in the PIK Loan.[38] From the information provided in connection with the Dismissal Motion, the identifiable parties apparently are as follows:
*716 Involuntary Petitioner[39] Golden Tree Plaintiffs[40] Golden Tree Counter-Defendants EB Holdings PIK Loan Beneficial and Third-Party[41] Defendants[42] Interest Holders[43] Defendants GLAS USA LLC Golden Tree Master Golden Tree Master Golden Tree Master Golden Tree Master Golden Tree Master Fund, Ltd. Fund, Ltd. Fund, Ltd. Fund, Ltd. Fund, Ltd. Kneiff Tower SARL Kneiff Tower S.a.r.l. Kneiff Tower S.A.R.L. Kneiff Tower S.a.r.l. Kneiff Tower S.a.r.l. Mount Kellett Master Mount Kellett Master Mount Kellett Master Mount Kellett Master Mount Kellett Master Fund II-A, LP Fund II-A, L.P. Fund II-A, L.P. Fund II-A, L.P. Fund II-A, L.P. Grace Bay III Holdings Grace Bay III Holdings Grace Bay III Holdings Grace Bay III Holdings Grace Bay III Holdings S.a.r.l. S.a.r.l. S.a.r.l. S.a.r.l. S.a.r.l. Arvo Investment Arvo Investment Arvo Investment Arvo Investment Arvo Investment Holdings S.a.r.l. Holdings S.a.r.l. Holdings S.A.R.L. Holdings S.a.r.l. Holdings S.a.r.l. Sound Point Montauk Sound Point Montauk Sound Point Montauk Sound Point Montauk Sound Point Montauk Fund, L.P. Fund, L.P. Fund, L.P. Fund, L.P. Fund, L.P. Absalon II Limited Absalon II Limited Absalon II Limited Alcentra Global Special Alcentra Global Special Alcentra Global Special Alcentra Global Special Situations Luxembourg Situations Luxembourg Situations Luxembourg Situations Luxembourg S.a.r.l. S.a.r.l. S.a.r.l. S.a.r.l. Alcentra MS S.a.r.l. Alcentra MS S.a.r.l. Alcentra MS S.a.r.l. Alcentra MS S.a.r.l.
[Editor's Note: The preceding image contains the references for footnotes[39] ,[40] ,[41] ,[42] ,[43] ]
*717 Clareant SCF S.a.r.l. Clareant SCF S.a.r.l. Clareant SCF S.a.r.l. Clareant SCF S.a.r.l. Credit Fund Golden Credit Fund Golden Credit Fund Golden Ltd. Ltd. Ltd. GN3 SIP LP GN3 SIP LP GN3 SIP LP Golden Tree Distressed Golden Tree Distressed Golden Tree Distressed Master Fund 2014 Ltd. Master Fund 2014 LP Master Fund 2014 LP Golden Tree Distressed Golden Tree Distressed Debt Master Fund LP Debt Master Fund LP Golden Tree Master Golden Tree Master Golden Tree Master Fund II, Ltd. Fund II, Ltd. Fund II, Ltd. Golden Tree High Yield Golden Tree High Yield Golden Tree High Yield Value Fund Offshore Value Fund Offshore Value Fund Offshore (Strategic) Ltd. (Strategic) Ltd. (Strategic) Ltd. Golden Tree E Golden Tree E Golden Tree E Distressed Debt Master Distressed Debt Master Distressed Debt Master Fund II LP Fund II LP Fund II LP Golden Tree Entrust Golden Tree Entrust Golden Tree Entrust Distressed Debt Master Distressed Debt Master Distressed Debt Master Fund LP Fund LP Fund LP Golden Tree Entrust Golden Tree Entrust Golden Tree Entrust Master Fund SPC Master Fund SPC Master Fund SPC Golden Tree High Yield Golden Tree High Yield Golden Tree High Yield Value Fund Offshore Value Fund Offshore Value Fund Offshore II, Ltd. II, Ltd. II, Ltd. Golden Tree High Yield Golden Tree High Yield Golden Tree High Yield Value Master Unit Value Master Unit Value Master Unit Trust Trust Trust Golden Tree High Yield Golden Tree High Yield Offshore 110 Ltd. Offshore 110 Ltd. Golden Tree Asset Golden Tree Asset Golden Tree Asset Management Lux Management Lux Management Lux S.a.r.l. S.a.r.l. S.a.r.l. Sound Point Credit Sound Point Credit Sound Point Credit Sound Point Credit Opportunities Master Opportunities Master Opportunities Master Opportunities Master Fund, L.P. Fund, L.P. Fund, L.P. Fund, L.P. SPC Lux S.a.r.l. SPC Lux S.a.r.l. SPC Lux S.a.r.l. SPC Lux S.a.r.l. Stichting PGGM Stichting PGGM Stichting PGGM Depositary Depositary Depositary Vista Fund I, L.P. Vista Fund I, L.P. Vista Fund I, L.P. Vista Fund I, L.P. Vista Fund II, L.P. Vista Fund II, L.P. Vista Fund II, L.P. Vista Fund II, L.P.
*718 Golden Tree Asset Management LP Golden Tree Distressed Debt Fund LP Stellar Performer Global Series BOATS Investments (Netherlands) B.V.
Out of the fifty-five participants in the PIK Loan, only thirty of them appear to be identifiable from the documents filed in connection with the Dismissal Motion.[44]
DISCUSSION
In its current response to the Petition, EBH seeks to dismiss this bankruptcy proceeding entirely while reserving its ability to seek entry of a judgment against the Petitioning Creditors for recovery of costs, or reasonable attorney's fees, or damages, or punitive damages.[45] If the involuntary bankruptcy case is not dismissed, EBH alternatively requests that the bankruptcy court abstain from conducting further proceedings until the coordinated State Court Litigation is concluded.
I. The Requirements for Involuntary Relief.
Under Section 303(a), an involuntary Chapter 11 case may be commenced against a corporation only if the corporation may be a debtor under Chapter 11. Under Section 303(b), an involuntary petition may be filed "by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount ..., if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor ..." 11 U.S.C. § 303(b)(1) (emphasis added).
Alternatively, "if there are fewer than 12 such holders," then an involuntary petition may be filed "by one or more of such holders" that hold aggregate debts of at least $15,775. 11 U.S.C. § 303(b)(2) (emphasis added). "Since section 303(b)(1) requires that claims not be contingent as to liability or the subject of bona fide dispute as to liability or amount, those requirements also apply to the holders referred to *719 in section 303(b)(2)." See 2 COLLIER ON BANKRUPTCY , ¶ 303.14[3] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2017).
As discussed below, the parties in this involuntary proceeding have focused on whether the claims asserted by the Petitioning Creditors are eligible for consideration under Section 303(b). A threshold problem also may exist, however, with respect to the number of eligible claims required by Section 303(b).
There allegedly are fifty-five participants in the PIK Loan. GLAS is the administrative agent on behalf of each lender, and apparently has authority to pursue any available collection remedy on behalf of all of the PIK Lenders. See PIK Loan Agreement at § 2.4(e) and PIK Loan Annex at § 4.03. In the event of a maturity default under Section 4.01(b) of the PIK Loan Annex, GLAS allegedly has authority as administrative agent to pursue recovery of the entire PIK Loan in its own name. See PIK Loan Annex at § 4.08. There are seven Petitioning Creditors, including GLAS,[46] and six of them are participants in the PIK Loan.
Attachment "A" to the Petition consists of a table offered under penalty of perjury setting forth the alleged amount of each claim of the Petitioning Creditors. The table first lists the GLAS claim to be in the amount of €1,802,961,230.23. That figure is footnoted to explain, however, that it includes the claims of the six PIK Lender creditors that follow. See Petition, Attachment "A" at n.1. The aggregate amount of the claims of those other six Petitioning Creditors[47] is €773,186,974.39.[48] The table then concludes with a "TOTAL AMOUNT" figure of €1,802,961,230.23.
It is not entirely clear to the court how the amount of the GLAS claim can be identical to the TOTAL AMOUNT figure for all of the claims appearing in the table. Perhaps that is an error in the construction of the table. What is more important, however, is that if the GLAS claim figure includes the claims of the other six Petitioning Creditors, a bona fide dispute as to the amount of any of those six claims would create a bona fide dispute as to the amount of the GLAS claim. Likewise, if the GLAS claim amount includes the claims of all fifty-five holders of interests in the PIK Loan, a bona fide dispute of any one of those fifty-five claims also *720 would create a bona fide dispute as to the alleged amount of the GLAS claim.[49] For Section 303(b)(1) to apply, the claims of at least three of the seven Petitioning Creditors must not be contingent as to liability or subject to bona fide dispute as to liability or amount.[50]
But what if the seven Petitioning Creditors, including GLAS, assert that at least one of their claims is not contingent or subject to bona fide dispute as to liability or amount?[51] Under the language of Section 303(b)(2), a single petitioning creditor is sufficient, but only if the total number of such creditors is less than 12.[52] In this instance, neither the Petition nor Attachment "A" to that petition alleges that the EBH has fewer than 12 creditors holding qualifying claims. In fact, both GLAS and the PIK Lenders allege only that the petition satisfies the requirements of Section 303(b)(1). See GLAS Opposition at 7:1-12; PIK Lender Opposition at 10:8-25. So even if GLAS has authority under the PIK Loan to pursue any available remedy on its own, including an involuntary bankruptcy proceeding against EBH, its claim would not be enough to satisfy Section 303(b)(2). The same would be true for any one of the other six Petitioning Creditors.[53]
*721 Whether the Petitioning Creditors have met the pleading requirements to satisfy Section 303(b) is an issue separate and apart from the proof requirements under Section 303(h). The latter is discussed below.
Of course, an alleged debtor may choose not to controvert the allegations of an involuntary petition, thereby permitting an order for relief to be entered. See 11 U.S.C. § 303(h). If the alleged debtor does contest the allegations of an involuntary petition, however, an order for relief is entered under the applicable chapter only if the debtor is "generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1) (emphasis added).[54] As one might guess, involuntary petitions typically are contested, if at all, over whether the alleged debtor is "generally not paying" its debts, see, e.g., Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 779 F.2d 471, 475 (9th Cir. 1985), or, whether the unpaid debts "are the subject of a bona fide dispute." See, e.g., Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1066-70 (9th Cir. 2002).[55] There may be an admixture of both contests because a bona fide dispute as to the liability or amount of a debt arguably means that the alleged debt is not currently due at all.[56] See generally 2 COLLIER ON BANKRUPTCY , supra, ¶ 303.11.[57]
Like many circuits, the Ninth Circuit applies a "totality of the circumstances" approach to whether an alleged debtor is generally not paying its debts when due. See Vortex Fishing, 277 F.3d at 1072. Under this approach, the court should consider a variety of factors, including *722 the number of unpaid claims, the amount of the unpaid claims, the materiality of the nonpayments, and the debtor's overall conduct of its financial affairs. See Datacom Systems, Inc., at 29, citing Laxmi Jewel, Inc. v. C & C Jewelry Mfg., Inc. (In re C & C Jewelry Mfg., Inc.), 2001 WL 36340326, at *12 (9th Cir. BAP Apr. 14, 2009). See, e.g., In re International Teldata Corp., 12 B.R. 879, 883 (Bankr. D.Nev. 1981) (payment of significant long-term debts versus periodic payment of small debts); In re St. Marie Dev. Corp., 334 B.R. 663, 671 (Bankr. D. Mont. 2005) (number of creditors and amount due).
For a majority of the federal circuits, including the Ninth Circuit, a "bona fide dispute" exists if "there is an objective basis for either a factual or legal dispute as to the validity of a debt." See Vortex Fishing, 277 F.3d at 1064. A "bona fide dispute as to liability" exists "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." Id. (citation and footnote omitted). The same objective test applies for determining a bona fide dispute as to the amount of a debt. See Marciano v. Chapnick (In re Marciano), 708 F.3d 1123, 1126 (9th Cir. 2013).[58]
II. EBH's Requests for Dismissal, or, Abstention.
A. Dismissal of the Bankruptcy Proceeding.
EBH's primary argument is that the debts asserted by the Petitioning Creditors arising out of the PIK Loan Agreement are subject to bona fide dispute as evidenced by the ongoing State Court Litigation.[59] See generally Dismissal Motion at 18:8 to 20:7. Moreover, EBH maintains that the obligations under the PIK Loan are not currently due because of the conduct of the GoldenTree Plaintiffs prior to the maturity date of the PIK Loan, as alleged in the GoldenTree Action and the EBH Action. Id. at 19:4-10. EBH therefore *723 argues that the eligibility requirements for a petitioning creditor under Section 303(b)(1) have not been met and the prerequisites for entry of an order for relief under Section 303(h)(1) do not exist. Under this view, EBH maintains that the Petition fails to state a claim for which relief may be granted.
GLAS represents that it joined in the Petition in two capacities: on behalf of itself as the administrative agent under the PIK Loan,[60] and in its capacity as agent for "[E]ach of the 55 PIK Lenders, each of whom has a separate and independent claim against the Debtor for amounts totaling at least €1.77 billion as of the filing of the involuntary petition." GLAS Opposition at 7:8-10. As previously indicated at note 51, supra, GLAS also argues that its claim alone satisfies the requirements for an involuntary petition presumably because it allegedly exceeds $15,775. GLAS also maintains that it is not a party to the GoldenTree Action nor the EBH Action, and that the PIK Lenders it represents as agent in this involuntary proceeding also are not parties to those coordinated actions. Id. at 9:4-17.[61]
FRBP 1011 provides that defenses and objections to an involuntary petition shall be presented in the manner prescribed by Civil Rule 12. Subparts (b), (c), (e) and (f) of Civil Rule 12 set forth the types of matters that may be presented by motion. Because EBH has not filed an answer to the Petition, the Dismissal Motion does not seek a judgment on the pleadings encompassed by Civil Rule 12(c). EBH also does not seek a more definite statement under Civil Rule 12(e), nor does it seek to strike any allegations of the Petition under Civil Rule 12(f). Because none of the other subparts apply, the Dismissal Motion presumably seeks relief under Civil Rule 12(b). But EBH does not identify which of the seven defenses enumerated under Civil Rule 12(b) supports the relief it requests.[62]
EBH concedes that this court has subject matter jurisdiction over this proceeding, see Dismissal Motion at 4:27-28, and that venue is proper. Id. at 4:28 to 5:1. Dismissal under Civil Rule 12(b)(1) and Civil Rule 12(b)(3), therefore, would not be available. As there is no dispute the EBH is incorporated in Nevada, dismissal under Civil Rule 12(b)(2) for lack of personal jurisdiction is not available. As there is no dispute that an involuntary summons was properly issued by the bankruptcy court (ECF Nos. 55, 56) and was properly served on EBH (ECF No. 58), relief under Civil Rule 12(b)(4) and Civil Rule 12(b)(5) also is not available. As joint bankruptcy petitions can be filed only by individuals who are spouses, see 11 U.S.C. § 302(a), dismissal of the involuntary Petition for failure to join a party under Civil Rule 19 also is not available under Civil Rule 12(b)(7). Compare Hujazi v. Recoverex Corp. (In re Hujazi), 2017 WL 3007084, at *10 & n. 9 (9th Cir. BAP July 14, 2017).
By process of elimination, EBH's present request must be based on Civil Rule 12(b)(6), i.e., failure to state a claim for *724 which relief may be granted.[63] Relief under Civil Rule 12(b)(6), however, is subject to the requirements of Civil Rule 12(c). The latter rule specifies that when matters outside of the pleadings are considered by the court, a motion under Civil Rule 12(b)(6) must be treated as a motion for summary judgment governed by Civil Rule 56. See, e.g., In re Rothery, 143 F.3d at 548-49 (Civil Rule 12(b)(6) motion to dismiss involuntary Chapter 7 petition). Under that rule, summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) (emphasis added).[64]
As previously mentioned, the Dismissal Motion is accompanied by thirty-two separate exhibits for which EBH requests that judicial notice be taken under FRE 201. Those exhibits consist of various pleadings, motions, responses, exhibits, orders, disclosures, and other documents filed in the GoldenTree Action and in the EBH Action. The opposition to the Dismissal Motion filed by the PIK Lender Group is accompanied by three separate documents consisting not only of exhibits filed in the State Court proceedings (RJN-PIK Ex. "A"),[65] but also copies of transcripts from certain hearings in those actions (RJN-PIK Ex. "B") as well as an entirely unrelated *725 involuntary Chapter 11 proceeding brought in this judicial district (RJN-PIK Ex. "C").[66] Added to this mix of materials outside of the Petition are two additional exhibits accompanying EBH's reply, for which judicial notice also is requested. Those additional exhibits consist of copies of the two anti-SLAPP motions that were filed in the GoldenTree Action and the EBH Action. It is against this impressive backdrop of thirty-seven documents outside of the Petition[67] that the court is requested to resolve the Dismissal Motion brought under Civil Rule 12(b)(6).[68]
Unfortunately, the arguments between the instant parties are ill-suited to resolution by a pleading motion. Either side may be completely wrong on the ultimate merits of the Petition, but both sides are, of course, certain. Neither side can establish the merits of their respective positions, however, without resorting to materials outside of the Petition. This is hardly surprising when parties to the same agreement have created a record of litigation in one court before commencing proceedings in another court. That litigation in state or federal court precedes the filing of an involuntary petition is not unusual. Even a creditor who prevails by default in a state court action can rely on the default judgment as establishing an eligible debt for purposes of its involuntary petition. See, e.g., In re Zapas, 530 B.R. at 571-72 (state court default judgment remained in effect after involuntary Chapter 7 debtor's requests for relief from the judgment were denied on appeal). What is unusual in the present case is that six of the Petitioning Creditors who sued EBH on the PIK Loan prior to joining in the involuntary petition never obtained a judgment of any kind in their favor, and are the only parties who have appeals of the State Court's rulings now pending before the Nevada Supreme Court.[69]
*726 In this situation, Civil Rule 12(c) requires that the summary judgment standard under Civil Rule 56(a) be applied. As a separate Summary Judgment Motion previously was filed by GLAS, see discussion at note 8, supra, it comes as no surprise that a determination of the existence of a bona fide dispute should be made, if at all,[70] in connection with the GLAS motion.[71] Whether the PIK Lenders would, or could, eventually join in the Summary Judgment Motion is not before this court. EBH's request for dismissal of the Petition under Civil Rule 12(b)(6), therefore, will be denied without prejudice.[72]
*727 B. Abstention by a Stay Pending Conclusion of the State Court Litigation.
EBH's request for abstention under Section 305 is a different matter.[73] Under that provision, the bankruptcy court may dismiss a case or suspend all proceedings in a case, at any time, "if the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1) (emphasis added). Unlike the dismissal or conversion of a voluntary Chapter 11 proceeding, or the appointment of a Chapter 11 trustee or examiner, the statutory focus is not on the "best interests of creditors and the estate," but on the interests of both the creditors and the debtor. Compare 11 U.S.C. § 1112(b)(1) ("on request of a party in interest ... the court shall convert a case ... or dismiss a case, whichever is in the best interests of creditors and the estate, unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."); 11 U.S.C. § 1104(a)(2) ("if such appointment [of a trustee or an examiner] is in the interests of creditors, any equity security holders, and other interests of the estate ..."). See Eastman v. Eastman (In re Eastman), 188 B.R. 621, 624-25 (9th Cir. BAP 1995) ("The test is whether both the debtor and the creditors would be 'better served' by a dismissal ..."). See also In re R & S St. Rose, LLC, Case No. 10-18827-MKN, Memorandum Decision on Motion to Dismiss, Docket No. 36, at 10 (Bankr. D. Nev. October 29, 2010). Moreover, because abstention under Section 305 may be sought in both voluntary and involuntary proceedings, the court is required to take into account the interests of all creditors,[74] not just the creditors that filed or joined in the involuntary petition.[75] EBH argues that the GoldenTree Action and the EBH Action *728 will fully resolve the liabilities between the parties under the PIK Loan, including any avoidance claims. See Dismissal Motion at 36:11-18 & nn.33 & 34.[76] There is no dispute that those liabilities are governed entirely by state law rather than bankruptcy law. No one disputes that all of the factual and legal issues raised in connection with the PIK Loan can be resolved in the State Court. Consent to the entry of a final judgment is not an issue in the State Court.[77]
In this instance, the named parties to this involuntary proceeding have stipulated to allow the State Court Litigation, including the appeals before the Nevada Supreme Court, to proceed during the involuntary "gap period." The abstention requested by EBH essentially would extend the gap period through the conclusion of the State Court Litigation. There is no doubt that conclusion of that litigation will result in a final determination of the enforceability of the PIK Loan Agreement out of which most if not all of the claims in this bankruptcy proceeding, if any, would arise.[78] There also is no doubt that inconsistent outcomes could result if the State Court litigation on the enforceability of the *729 PIK Loan Agreement proceeds to judgment while this bankruptcy court makes the determinations required under Sections 303(b) and 303(h)(1) to involuntarily place EBH into bankruptcy.
The present status of the State Court Litigation tempers these considerations. The State Court orders denying the two anti-SLAPP dismissal motions are currently on appeal before the Nevada Supreme Court as required by NRS 41.679(4). If the Nevada Supreme Court concludes that the EBH Action should have been dismissed, along with the counterclaim and third party claims that EBH presented in the GoldenTree Action, then there likely would be no bona fide dispute as to liability or amount of the PIK Lender claims. Presumably these related appeals have been consolidated and briefing will be completed before the end of this year. Exactly when the Nevada Supreme Court will schedule oral argument, if at all, is unknown. At the hearing on the Dismissal Motion, none of the parties indicated whether they will seek to have the Nevada Supreme Court hear and decide the anti-SLAPP appeals before the scheduled trial of the coordinated actions.
The parties do not dispute that the State Court scheduled a jury trial on a five week "stack" to commence on April 16, 2018. (RJN-EBH Ex. 24). Not surprisingly, counsel for the respective parties differ on whether that jury trial actually will be ready to proceed on that date. EBH represented that significant discovery has been completed as evidenced by the over two million pages of documents already produced, see Dismissal Motion at 2:7-8, but apparently concedes that EBH has produced a much smaller portion of those documents. See EBH Reply at 2:19-21 & n.9. Apparently, optimistic that the Nevada Supreme Court will rule in its favor on anti-SLAPP motions, EBH argues that the State Court Litigation will move forward on an expedited schedule. See Dismissal Motion at 37:1-9; EBH Reply at 11:13-15. GLAS perhaps is optimistic that the dismissal rulings will be overturned, but separately maintains that the State Court Litigation is immaterial to GLAS's effort to seek involuntary relief against EBH. See GLAS Opposition at 9:3 to 10:16. The PIK Lenders infer that the coordinated actions will not be ready for trial on the scheduled date.[79] Regardless of when the State Court Litigation is completed, however, further proceedings in the involuntary case at this time risk inconsistent outcomes on the merits of the claims arising from the PIK Loan Agreement.
Debts that may be addressed through a voluntary bankruptcy are not required to be reduced to judgment, liquidated, noncontingent, matured, or undisputed. See 11 U.S.C. §§ 101(12) and 101(5)(A). See discussion at note 57, supra. A debtor can voluntarily seek relief from such debts by subjecting its real and personal property interests to the jurisdiction of the bankruptcy court. In such cases, the debtor does so consensually and also agrees to have its activities scrutinized by its creditors, any appointed trustee, and the court.
This is not the situation at all when parties attempt to take actual or constructive possession of a debtor's property without *730 its consent through an involuntary proceeding. Filing an involuntary petition against a debtor triggers the automatic stay that protects property of the bankruptcy estate, but the debtor, of course, is free to operate and use its property as if no involuntary proceeding had been commenced. See 11 U.S.C. § 303(f). If the involuntary debtor does not respond to the petition, an order for relief will be entered, thereby preventing the debtor from operating its business or using its property without supervision of the bankruptcy court or any appointed trustee. In a Chapter 7 context, entry of an order for relief results in the immediate appointment of a Chapter 7 bankruptcy trustee to take over control of the debtor's assets, including any business operations, any claims being prosecuted by the debtor, and any rights that may be asserted by the debtor. In a Chapter 11 context, entry of an order for relief does not automatically result in a trustee being appointed, but typically is followed by the petitioning creditors' immediate request for appointment of a Chapter 11 trustee under Section 1104(a).[80] A Chapter 11 trustee can exercise the same control over the debtor's assets that can be asserted by a Chapter 7 trustee.[81]
Where there is ongoing litigation, an involuntary bankruptcy offers obvious strategic advantages to a creditor. Not only can a bankruptcy trustee seek to avoid transfers made and obligations incurred by a debtor, she can also settle existing litigation and sell a debtor's claims and causes of action. See, e.g., In re Hyloft, 451 B.R. 104 (Bankr. D. Nev. 2011). Moreover, a bankruptcy trustee might attempt to exercise any available statutory or contractual rights that the debtor possesses as an equity security holder in other, non-debtor entities. See generally Theodore Hartl, Trustee's Corporate Governance Rights and Obligations, at 2-3, ABA Business Law Section Spring Meeting, April 6-8, 2017.
Congress insisted, however, that a debtor who does not consent to bankruptcy court supervision cannot be deprived of its property unless "[T]he debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). Bankruptcy law takes a cautionary approach when it permits the interests of creditors to be altered or abridged without their consent. See, e.g, 11 U.S.C. § 363(c)(2) (use of cash collateral); 11 U.S.C. § 1129(b) (Chapter 11 cramdown of dissenting holders of impaired claims and interests). No less is required when an alleged debtor is placed into bankruptcy without its consent.[82]
*731 In this case, the court concludes that a stay of this involuntary proceeding is appropriate. A stay of the proceeding is not a determination that a bona fide dispute as to liability or amount actually exists. Nor is it a determination that the Petition was filed in bad faith. Rather, it is a recognition that the GoldenTree Action and EBH Action are the appropriate and existing proceedings to resolve issues under nonbankruptcy law in a court that has undisputed authority to enter a final judgment. Entry of an order staying this involuntary bankruptcy proceeding pursuant to Section 305 therefore is warranted.
CONCLUSION
In light of the foregoing, the court will deny without prejudice the request for dismissal of this involuntary proceeding, and will stay the matter pending the outcome of the State Court Litigation until further order of this court. A separate order has been entered concurrently herewith.

EB Holdings II, Inc. ("EBH") filed a Request for Judicial Notice along with the Dismissal Motion. (ECF No. 74). The opposition to the Dismissal Motion also is accompanied by a Request for Judicial Notice filed by the "PIK Lender Group." (ECF No. 90). Both requests are granted. In this Memorandum Decision, the exhibits attached to those requests will be referenced, respectively, as "RJN-EBH Ex." and "RJN-PIK Ex." Where necessary, the reference to specific exhibits also will include specific page numbers.

The parties to these proceedings subsequently attempted to supplement the record, and the Dismissal Motion was retaken under submission as of September 29, 2017. See note 13, infra.

EBH is incorporated in the State of Nevada. See Corporate Ownership Statement. (ECF No. 27). EB Holdings, Inc., a Delaware corporation, was the borrower under a certain "PIK Loan Agreement" dated March 23, 2007. (RJN-PIK Ex. "A," 005-122). The last 46 pages of the PIK Loan Agreement consists of an "Annex" setting forth various additional terms governing the agreement ("PIK Loan Annex"). (RJN-PIK Ex. "A," 077-122). According to the PIK Loan Agreement, EB Holdings, Inc. borrowed €600,000.00 from Credit Suisse International and Citibank N.A., New York Branch, with Credit Suisse, London Branch ("Credit Suisse") named as the administrative agent. EBH apparently is the successor in interest to EB Holdings, Inc.

Numerous documents were filed concurrently with the Petition. GLAS USA LLC ("GLAS") filed a "Statement of Petitioning Creditor GLAS USA LLC, in its Capacity as Administrative Agent in Support of Involuntary Chapter 11 Petition under Section 303 of the Bankruptcy Code" ("GLAS Statement"). (ECF No. 3). All of the Petitioning Creditors, including GLAS, filed a disclosure required by FRBP 1010(b) and FRBP 7007.1 (ECF Nos. 4, 8, 11, 14, 17, 21, and 24) along with declarations of their representatives under FRBP 1003(a). (ECF Nos. 5, 7, 10, 12, 15, 19, and 22). An additional "Statement of the PIK Lender Group in Support of Their Involuntary Chapter 11 Petition Under Section 303 of the Bankruptcy Code" ("PIK Lender Group Statement") was filed. (ECF No. 6). The PIK Lender Group apparently holds 77 percent of the principal issue face amount of the "PIK Loan." The PIK Lender Group is an unofficial collective that consists of the following six entities: GoldenTree Asset Management LP, Alcentra Limited, Fortress Investment Group/Mount Kellet Capital Management, HIG Capital International Advisors LLP/Bayside Capital, Sound Point Capital Management, LP, and Varde Partners Europe Limited. The six entities apparently are, or are affiliates of, the managers and/or advisors of the funds and/or accounts that hold beneficial interests in the PIK Loan. See PIK Lender Group Statement at 2 n.1. GLAS represents that there are 61 participants in the PIK Loan. See GLAS Statement at 2:7-8.

GLAS apparently is the successor in interest to Credit Suisse, as the result of an assignment dated May 17, 2017. See GLAS Statement at 2:15-23.

One of the two State Court actions is entitled GoldenTree Master Fund, Ltd., et al. v. Howard Meyers, et al., denominated Case No. A-16-742507-B ("GoldenTree Action"). With the exception of GLAS, all of the Petitioning Creditors appear to be named plaintiffs in the GoldenTree Action. The participants in the PIK Loan who commenced the GoldenTree Action are commonly referred to as the "GoldenTree Group," but may also be referred to as the "GoldenTree Plaintiffs" or "GoldenTree Parties" as the context requires in this Memorandum Decision. Defendants named in the GoldenTree Action include EBH, its principal Howard Meyers ("Meyers"), Eco-Bat Technologies Ltd. ("Eco-Bat"), Quexco Inc. ("Quexco"), RSR Corporation ("RSR"), and others. The other State Court action is entitled EB Holdings II, Inc. v. Goldentree Master Fund Ltd., et al., denominated Case No. A-16-745669-B ("EBH Action"). With the exception of GLAS, all of the Petitioning Creditors appear to be named defendants in the EBH Action. On December 15, 2016, the State Court entered an order coordinating the two actions. (RJN-EBH Ex. 22). Where appropriate, the GoldenTree Action and EBH Action will be referred to jointly as the "State Court Litigation."

On the same date GLAS filed it's opposition to the Dismissal Motion, it also filed its Motion for Summary Judgment and Entry of an Order for Relief, etc. ("Summary Judgment Motion") (ECF No. 80), accompanied by the Declaration of Daniel R. Fisher. (ECF No. 82). GLAS' written argument in support of its Summary Judgment Motion is included in the GLAS Opposition. GLAS concurrently filed an ex parte motion seeking to schedule an expedited hearing so that the Summary Judgment Motion would be argued concurrently with the Dismissal Motion. (ECF No. 85). The court delayed ruling on the ex parte request until the initial status conference was held on June 27, 2017. At the status conference, EBH requested that its Dismissal Motion be heard before the completion of briefing and presentation of arguments on the GLAS Summary Judgment Motion. After oral arguments were presented, the ex parte motion for an expedited hearing on the Summary Judgment Motion was denied. As a result, EBH was able to present the instant Dismissal Motion on July 20, 2017, and a separate hearing on the Summary Judgment Motion was held on August 17, 2017. (ECF No. 98).

The relief from automatic stay stipulation ("RAS Stipulation") approved by that order had been filed on June 6, 2017. (ECF No. 71). The RAS Stipulation purports to be between EBH on one hand, and certain Petitioning Creditors "[T]ogether with a group of alleged holders of interests in a payment-in-kind loan ..." That description includes a footnote stating that the description "[I]s not intended as an admission by EB Holdings that any one of the Petitioning Creditors is a lender to EB Holdings or that the GLAS USA LLC, in its capacity as successor administrative agent ("Administrative Agent"), was properly appointed. EB Holdings reserves its right to contest the standing of the Petitioning Creditors and/or the Administrative Agent." RAS Stipulation at 1 n.1. The RAS Stipulation was approved by counsel for EBH and counsel for the PIK Lender Group. Attached to the RAS Stipulation as Exhibit "1" was a proposed form of order approving the RAS Stipulation. The introductory paragraph of the proposed order recites that the RAS Stipulation is filed by "EB Holdings II, Inc., the PIK Lender Group, and GLAS-USA, by and through their counsel of record ...." The order approving that RAS Stipulation entered on June 27, 2017, is identical to the proposed order except for the insertion of the docket number for the Stipulation. Again, the introductory paragraph of the docketed order indicates that the parties who stipulated to relief from stay, so that the State Court Litigation could proceed, included EBH, the PIK Lender Group, and GLAS. The docket indicates that electronic notice of the filing of both the RAS Stipulation and the order approving the stipulation was sent to both lead and local counsel for GLAS.

LEG does not identify itself as a creditor of EBH, but apparently is in favor of this involuntary proceeding because of LEG's relationship to Eco-Bat. As mentioned in note 7, Eco-Bat was a named defendant in the GoldenTree Action. Eco-Bat and related entities apparently are the world's largest producer and recycler of lead (including from lead-acid car batteries). EBH apparently owns approximately 87 percent of the equity interests in Eco-Bat while LEG holds nearly 7 percent. See LEG Statement at 3:7-12. On or about January 18, 2017, Eco-Bat was dismissed from the GoldenTree Action for lack of personal jurisdiction inasmuch as Eco-Bat was formed under the laws of the United Kingdom and lacks sufficient contacts with the State of Nevada. (RJN-EBH Ex. 10). LEG represents that it will be proceeding with a shareholder derivative action in the English High Court addressing various improper and allegedly illegal acts of Meyers, either directly or through his control of EBH. See LEG Statement at 3:21 to 4:13 & nn. 5 and 7.

On July 18, 2017, EBH filed a motion to strike the LEG Statement (ECF No. 132) along with a notice scheduling the motion to be heard on August 17, 2017, i.e., concurrently with the Summary Judgment Motion. (ECF No. 136). Additionally, EBH filed an ex parte motion (ECF No. 133) to advance the hearing on its motion to strike to July 20, 2017, i.e., the same date as the Dismissal Motion. On July 18, 2017, LEG filed an objection to the ex parte motion. (ECF No. 135). At the July 20, 2017, hearing on the instant Dismissal Motion, the court orally denied the ex parte motion. Accordingly, the motion to strike the LEG Statement was not vacated from the August 17, 2017, calendar.

The EBH Reply is accompanied by a supplemental request for judicial notice that includes two additional exhibits ("Supp. RJN-EBH"). (ECF No. 112). That request is granted.

The Summary Judgment Motion was heard on August 17, 2017, and taken under submission. On August 22, 2017, the PIK Lenders filed a "Notice of Clarification of the Record in Connection with The Alleged Debtor's Representation Regarding the Status of the State Court Litigation at the August 17, 2017 Hearing on the Motion for Summary Judgment Filed by GLAS USA LLC." ("Clarification Notice") (ECF No. 181). That document included a letter addressed to this court from the PIK Lenders' bankruptcy counsel conveying information obtained from counsel for the GoldenTree Plaintiffs as to the status of the State Court Litigation. On August 30, 2017, GLAS filed a "Motion to Reopen the Record in Connection with GLAS USA LLC's Motion for Summary Judgment" (ECF No. 188), along with a request for an expedited hearing. EBH filed opposition to both requests, as well as the request for an expedited hearing. (ECF Nos. 187, 192, and 196). On September 12, 2017, the court entered an Order Regarding: (1) Notice of Clarification of the Record in Connection with the Alleged Debtor's Representation Regarding the State [sic] of the State Court Litigation at the August 17, 2017 Hearing on the Motion for Summary Judgment Filed by GLAS USA LLC, (2) Motion to Reopen the Record in Connection with GLAS USA LLC's Motion for Summary Judgment, and (3) Ex Parte Application for Order Shortening Time to Hear Motion to Reopen the Record on GLASS[sic] USA, LLC's Motion for Summary Judgment. (ECF No. 193). For reasons set forth in that order, the court struck the Clarification Notice without prejudice to the parties stipulating to supplement the record as to the status of the State Court Litigation. The order also established a deadline of September 29, 2017, for briefing to be completed on the motion of GLAS to reopen the record on its Summary Judgment Motion. The order also provided that upon completion of that briefing, both the Dismissal Motion and the Summary Judgment Motion are resubmitted for decision.

The original complaint was filed on August 26, 2016. Before that complaint was served, an amended complaint ("Amended Complaint") was filed on September 9, 2016. (RJN-EBH Ex. 1).

Whether improper acceleration of a promissory note results in a complete or partial cancellation of the obligations under the note is clearly raised in the EBH Action. See EBH Complaint at ¶¶ 51-52. As required by the PIK Loan Agreement, that issue will be decided under New York law. At the hearing, GLAS submitted copies of several court opinions on the acceleration issue, e.g., Fleet National Bank v. Liuzzo, 766 F.Supp. 61 (D. R.I. 1991), Shawmut Bank, N.A. v. LaFazia, 1992 WL 139003 (D. R.I. 1992), and United States v. 1300 Lafayette East, 455 F.Supp. 988 (E.D. Mich. 1978), but none of those decisions were decided based on New York law. Moreover, it does not appear that EBH is asserting the allegedly improper acceleration as a basis for recoupment or setoff to reduce the amount of the GoldenTree Parties' claims. Compare In re Focus Media, Inc., 378 F.3d 916, 924-27 (9th Cir. 2004) (alleged debtor's counterclaim for "post-analysis" invoice adjustments to reduce the amount of petitioners' claims); In re Seko Investment, Inc., 156 F.3d 1005, 1008-1010 (9th Cir. 1998) (alleged debtor's counterclaim to offset amount due under separate title insurance policy against amount separately due under promissory notes).

Section 4.02 of the PIK Loan Annex provides in pertinent part that in certain continuing events of default, the administrative agent or PIK Lenders holding at least 25 percent of the principal amount outstanding "[M]ay declare the entire amount of the Loans then outstanding to be due and payable immediately." Certain other events of default render the entire amount outstanding immediately due and payable without further action or notice.

Section 4.04 of the PIK Loan Annex provides in pertinent part that PIK Lenders holding a majority of the outstanding principal amount may waive a non-continuing default or event of default, and may rescind an acceleration of the obligation.

Section 4.06 of the PIK Loan Annex is entitled "Limitation on Suits." That section lists five separate requirements that apparently must be met before a PIK Lender may take action to pursue a remedy to enforce the PIK Loan. Those requirements include the Lender giving notice to the administrative agent of a continuing violation, a written request to the administrative agent to pursue the remedy from PIK Lenders holding at least 25 percent of the principal amount outstanding, and an offer from the requesting PIK Lenders to provide satisfactory indemnity to the administrative agent.

With respect to the declaratory relief claim based on allegations of improper acceleration of the PIK Loan, the GoldenTree Parties argued to the State Court, in pertinent part, that "EB Holdings does not, and cannot, present any facts to show that it is solvent to supports its claims that Defendants improperly accelerated the PIK Loan ...The declaratory judgment and breach of contract claims based on Defendants' alleged violation of the Acceleration Clause are defective for that reason alone." GoldenTree Special Motion at 8:12-15. The GoldenTree Parties further argued to the State Court that "EB Holdings does not, and cannot, point to any contract provision that prohibits lenders from exercising their rights to accelerate the PIK Loan or that grants EB Holdings a remedy if it believes the PIK Loan was improperly accelerated. Without such a contract provision, EB Holdings has no remedy based on the alleged improper acceleration of the PIK Loan, and certainly not a remedy that the entire PIK Loan must be cancelled. See Suzy Phillips Originals, Inc. v. Coville, Inc. , 939 F.Supp. 1012, 1017 (E.D. N.Y. 1996) ('[U]nder New York law a party to a contract action is generally confined to the remedies found in the contract.')" GoldenTree Special Motion at 8:21 to 9:1. It appears that the GoldenTree Parties expressly argued to the State Court that EBH's claim for a declaration canceling the PIK Loan based on improper acceleration is invalid under New York law.

SLAPP is an acronym for "Strategic Litigation Against Public Participation." The term generally refers to lawsuits that are targeted against certain persons for the purpose of silencing or discouraging the named defendants from voicing their concerns to the government or on matters of public interest. This can occur, for example, when a party takes steps to raise a matter of public interest only to be greeted by a lawsuit intended to quell or discourage the original effort. The plaintiff who files the SLAPP lawsuit achieves its purpose by draining the financial resources of the named defendants.

To prevail on a special motion to dismiss under the anti-SLAPP statute, the defendant is required to demonstrate by a preponderance of the evidence that its original claims were "based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). If that burden is met, the trial court then must determine whether the plaintiff has established with prima facie evidence a probability of prevailing on its claim. See Delucchi v. Songer, 396 P.3d 826, 831 & n.4 (Nev. 2017), citing NRS 41.660(3)(b).

The State Court's findings apparently mean that: (1) the GoldenTree Parties did not establish that the claims they asserted in the GoldenTree Action were based on a good faith communication or right to free speech encompassed by NRS 41.660(3)(a), and (2) there were genuine factual disputes preventing a determination that EBH had established with prima facie evidence a probability of prevailing on the claims asserted in the EBH Complaint.

Denial of a special motion to dismiss under the Nevada anti-SLAPP statute is subject to an immediate appeal to the Nevada Supreme Court (rather than the Nevada Court of Appeals). See Delucchi v. Songer, 396 P.3d at 830 n.3, citing NRS 41.670(4).

The GoldenTree Plaintiffs allege that EBH is in breach of the PIK Loan Agreement through the insolvency event of default set forth in Section 4.01(g) of the PIK Loan Annex. See Amended Complaint at ¶ 133. They further allege that as a result of the insolvency default the PIK Loan has been accelerated without notice or demand under Section 4.02 of the Annex and that "the entire amount of the loan outstanding is immediately due and payable." Id. at ¶ 134. The GoldenTree Plaintiffs further allege that they "have been damaged in an amount not less than €787.71 million, which represents their holdings of the €1.6 billion outstanding due under the EB Holdings Loan Facility as of March 31, 2016." Id. at ¶ 136. In the prayer, the GoldenTree Plaintiffs seek compensatory damages on the breach of contract claim "in an amount to be proved at trial." Id. at 51:22-23. Even though the GoldenTree Plaintiffs alleged in the Amended Complaint that the entire amount of the loan outstanding is immediately due, the alleged damages were less than the entire amount, and the prayer sought only to recover their damages according to proof at trial. Whether acceleration of a promissory note is a binary result akin to pregnancy, i.e., the entire loan is either due or not due, it is arguable that the GoldenTree Plaintiffs are seeking to recover as compensatory damages only the portions of the PIK Loan in which they have an interest. What happens to the remaining portions of the accelerated PIK Loan is not alleged.

The GoldenTree Plaintiffs allege that EBH transferred certain assets to defendants Meyers, Quexco, and RSR, with intent to hinder, delay, and defraud creditors, and that the alleged transfers are avoidable for actual fraud under the Nevada version of the Uniform Fraudulent Transfer Act, NRS 112.180(1)(a). See Amended Complaint at ¶¶ 187 through 191.

The GoldenTree Plaintiffs also allege that EBH, Meyers, Quexco and RSR caused the transfer of certain assets of Eco-Bat to defendants Meyers, Quexco, and RSR, without EBH receiving reasonably equivalent value, that are avoidable as constructive fraudulent transfers under NRS 112.180(1)(b). See Amended Complaint at ¶¶ 193 through 197.

The GoldenTree Plaintiffs allege that EBH was insolvent at all relevant times prior to the commencement of the GoldenTree Action, see Amended Complaint at ¶¶ 77-81 and Second Amended Complaint at ¶¶ 98-102, while EBH denies that it was, and is, insolvent. See EB Holdings II, Inc.'s Answer to Second Amended Complaint, Counterclaim and Third-Party Complaint ("EBH Counterclaim") at ¶¶ 98-102. (RJN-EBH Ex. 28). If EBH was not and is not insolvent, then arguably Section 4.01(g) of the PIK Loan Annex does not apply, and the PIK Loan was not accelerated automatically under Section 4.02 of the Annex.

Apparently in response to the various motions to dismiss, the GreenTree Plaintiffs added an allegation that prior to commencing the GoldenTree Action, they complied with Section 4.06 of the PIK Loan Annex, i.e., the "no action" clause discussed in note 18, supra. In particular, the GoldenTree Plaintiffs alleged in pertinent part that they "provided written notice of the Administrative Agent on September 2, 2016, in compliance with Section 4.06 of Annex 1 to the PIK Loan Agreement, requesting that the Administrative Agent pursue this claim." See Second Amended Complaint at ¶ 160.

The fourth cause of action still alleges a breach of contract and still alleges that "the entire amount of the loan outstanding is immediately due and payable by EB Holdings ..." Second Amended Complaint at ¶ 157. It then alleges that the GoldenTree Plaintiffs have been damaged "in an amount in excess of $10,000 based on their €787.71 million in holdings, as of September 5, 2016, of the €1.6 billion outstanding amount due under the PIK Loan Agreement as of March 31, 2016." Id. at ¶ 159.

EBH again alleged the improper acceleration under the PIK Loan Agreement as a basis for complete or partial cancellation of the PIK Loan. See EBH Counterclaim at ¶¶ 87-88 and 122.

As in their prior GoldenTree Special Motion, see note 19, supra, the GoldenTree Plaintiffs argued that improper acceleration would not result in cancellation of the PIK Loan. In pertinent part, they argued that "There are no remedies available to EB Holdings if it thinks acceleration occurred but was improper ... In fact, the only remedy set forth in the Acceleration Clause gives the lenders an ability to rescind the acceleration ...This is fatal to EB Holdings' declaratory relief and breach of contract claims, as New York law provides that a party's 'obligations' do not 'go beyond those intended and stated in the language of the contract.' Wolff v. Rare Medium, Inc. , 210 F.Supp.2d 490, 497 (S.D. N.Y. 2002), aff'd, 65 Fed.Appx. 736, 738 (2d Cir. 2003) ; see also Terwilliger v. Terwilliger , 206 F.3d 240, 246 (2d Cir. 2000) (rejecting breach of contract claim where the agreement 'contains no language' prohibiting conduct or creating remedy); Paul v. Bank of Am. Corp. , No. 09-CV-1932 (ENV)(JMA), 2011 WL 684083, at *6 (E.D. N.Y. Feb. 16, 2011) (no breach where 'the plain language' of the agreement 'did not prohibit' the conduct); Ari & Co., Inc. v. Regent Int'l Corp. , 273 F.Supp.2d 518, 523 (S.D. N.Y. 2003) (improper to imply 'obligations that were not explicitly part of the Agreement'); Ehag Eisenbahnwerte Holding Aktiengesellschaft v. Banca Nationala A Romaniei , 306 N.Y. 242, 249, 117 N.E.2d 346 (1954) (no breach where agreement 'clearly establish[ed] that no duty was imposed upon, or assumed by [defendants]"). EB Holdings cannot establish a probability of prevailing on its declaratory relief and breach of contract claims for this reason alone." Golden Tree EBH Special Motion at 13:25 to 14:12. It again appears that the GoldenTree Plaintiffs expressly argued to the State Court that under New York law, EBH's claim for a declaration canceling the PIK Loan based on improper acceleration is invalid.

As discussed at 711-12 and note 22, supra, the written order setting forth the State Court's ruling on that special motion to dismiss only specified that the Defendants in the EBH Action did not meet their burden on the special motion and that genuine issues of material fact precluded the motion from being granted. Moreover, there was no written finding under NRS 41.660(3)(b) that EBH had demonstrated with prima facie evidence the probability of prevailing on the four causes of action alleged in the EBH Complaint.

The order denying the special motion to dismiss is unclear. The term "Claim" is used in the State Court's findings numbered 1 and 2 set forth on page 3 of the order. "Claim" is previously defined in the order to mean "[T]he fifth cause of action of EB Holdings' Counterclaim and Third-Party Complaint (the "Claim")." See Golden Tree Special Order at 3:2-3. The State Court's finding number 2 clearly pertains to the fifth cause of action in EB Holdings' counterclaim and third party complaint. The State Court's finding number 1, however, presumably refers to claims for relief asserted in the amended complaints filed in the GoldenTree Action. This order is, however, far more specific than the EBH Special Order.

It appears that the State Court's determination that EBH has demonstrated a probability of prevailing on the fifth cause of action cannot be admitted later in the GoldenTree Action nor will it impact EBH's burden of proof on that cause of action. See Delucchi v. Songer, 396 P.3d at 831, citing NRS 41.660(3)(1-2).

The face of the motion indicates that it would be considered by the State Court on June 15, 2017. A copy of the Third Amended Complaint is attached as an exhibit to a motion for leave to file third amended complaint in the GoldenTree Action. (RJN-EBH Ex. 13). That motion for leave to amend was filed in the GoldenTree Action on May 15, 2017. The additional plaintiffs sought to be added are Absalon II Limited, Credit Fund Golden Ltd., GN3 SIP LP, GoldenTree Distressed Master Fund 2014, Ltd., GoldenTree Distressed Debt Master Fund LP, GoldenTree Master Fund II, Ltd., GoldenTree High Yield Value Fund Offshore (Strategic), Ltd., GoldenTree E Distressed Debt Master Fund II LP, GoldenTree Entrust Distressed Debt Master Fund LP, GoldenTree Entrust Master Fund SPC on behalf of and for the account of Segregated Portfolio I, GoldenTree High Yield Value Fund Offshore II, Ltd., GoldenTree High Yield Value Master Unit Trust, GoldenTree High Yield Value Fund Offshore 110 Ltd., GoldenTree Asset Management Lux S.a.r.l., and Stichting PGGM Depositary acting in its capacity as title holder for PGGM High Yield Fund. There are twenty-eight proposed plaintiffs named in the Third Amended Complaint.

Paragraph 178 still alleges an insolvency default under Section 4.01(g) of the PIK Loan Annex. When the parties filed the RAS Stipulation on June 6, 2017, see note 9, supra, a maturity default on the PIK Loan already had been alleged as a basis for the breach of contract claim in the GoldenTree Action. At the hearing on the Dismissal Motion, counsel for GLAS argued that the GoldenTree Action is not based on a loan maturity default, but apparently was not aware that the GoldenTree Plaintiffs had amended their complaint to allege the same maturity default that serves as the basis for GLAS's asserted claim in this involuntary proceeding.

€1.373 billion would represent slightly more than 76 percent of the €1.8 billion outstanding amount of the PIK Loan. So even if the GoldenTree Plaintiffs are now asserting that the entire amount of the PIK Loan is due without acceleration, compare discussion at 715 and note 36, supra, they now seek to collect more than three-quarters of the loan balance.

GLAS originally asserted that there are 61 participants in the PIK Loan. See note 5, supra. In response to the Dismissal Motion and at the hearing, GLAS represented that there are 55 participants in the PIK Loan. See GLAS Opposition at 4:12-13. The court will use the latter figure for purposes of this Memorandum Decision.

Petition at 3-9. There are seven Petitioning Creditors.

Third Amended Complaint at ¶¶ 14 to 41. There are twenty-eight named plaintiffs.

EBH Counterclaim at ¶¶ 9 to 38. There are thirty named counterclaim and third-party defendants.

EBH Complaint at ¶¶ 8 to 20. There are thirteen named defendants.

Appendix of Exhibits in Support of Special Motion to Dismiss (RJN-PIK Ex. A). There are twenty-eight parties identified in the declarations filed in connection with the special motion to dismiss filed by the GoldenTree Plaintiffs in the GoldenTree Action.

Apparently, EBH is a holding company with no business operations, no creditors other than holders of interests in the PIK Loan, and no employees. See Dismissal Motion at 28:24-25; EBH Reply at 9:16-18.

The title of the Dismissal Motion includes a "Reservation of Rights under 11 U.S.C. § 303(i)." The penultimate section of the text also includes that reservation. See Dismissal Motion at § V. Under that statute, if an involuntary case is dismissed without the consent of all parties, the alleged debtor can seek entry of relief against either all of the petitioners under Section 303(i)(1), or, against any petitioner who filed the petition in bad faith under Section 303(i)(2). As to the former, the relief may consist of either an award of costs, or an award of reasonable attorneys fees under Section 303(i)(1)(A). As to the latter, the relief may consist of any damages proximately caused by the commencement of the involuntary proceeding, or, punitive damages under Section 303(i)(2)(B). Only the alleged debtor may obtain a judgment for relief under Section 303(i). See, e.g., Vibe Micro, Inv. v. SIG Capital, Inc., 2017 WL 2225569 (D. Nev. May 22, 2017) (shareholder of involuntary debtor did not have standing to seek relief under either part of Section 303(i) ).

EBH and GLAS dispute whether GLAS is a qualified petitioning creditor in connection with two arguments: (1) that GLAS acquired the position of Credit Suisse for the actual purpose of filing the involuntary petition in violation of FRBP 1003(a), compare Dismissal Motion at 20:16 to 21:4, with GLAS Opposition at 13 n.8, and (2) that GLAS joined in the Petition in violation of the majority control requirements of Section 4.05 of the Annex to the PIK Loan. Compare Dismissal Motion at 21:5-18, with GLAS Opposition at 13:5 to 14:17.

The lowest amount of the claims of the Petitioning Creditors is €1,577,591.08. See Petition, Attachment "A." If converted to U.S. dollars, that figure presumably exceeds $15,775.

The difference between the GLAS claim and the aggregate amount of the other six claims is €1,029,774,255.84. It therefore appears that most of the GLAS claim alleged in the Petition represents sums owed to other participants in the PIK Loan. It is not clear, however, on whose behalf the €1,029,774,255.84 difference is being asserted by GLAS "solely in its capacity as Administrative Agent" inasmuch as the other six Petitioning Creditors have asserted their separate claims. This uncertainty is heightened because the ad hoc PIK Lender Group has implied that only some of its members are amongst the Petitioning Creditors in this proceeding, see PIK Lender Group Statement at 5 n.5, and the identified members of the PIK Lender Group, see id. at 1 n.1, are not identical to the names of the Petitioning Creditors.

GLAS has acknowledged that it filed the Petition "[O]n behalf of itself as Administrative Agent and in its capacity as agent for each of the 55 PIK Lenders, each of whom have a separate and independent claim against the Debtor ..." GLAS Opposition at 7:8-9.

In this case, there may be an actual dispute over whether a sufficient number of qualifying creditors have joined in the involuntary petition, rather than a bona fide dispute as to liability or amount of the claims. Compare In re Datacom Systems, Incorporated, Case No. 14-11096-ABL, Memorandum and Order Regarding Involuntary Petition and Motion to Dismiss, Docket No. 228, at 20-27 (Bankr. D.Nev. June 25, 2015) (concluding after a contested evidentiary hearing that an involuntary Chapter 7 petition was filed by three qualified creditors under Section 303(b)(1) ).

See GLAS Opposition at 7 n.6 ("Because the Debtor has no debts other than the PIK Loan, GLAS alone can satisfy the creditor numerosity requirement under section 303, either as agent for each of the remaining PIK Lenders (of which there are more than 3), or as a single creditor asserting claims in its own name.").

The language of Sections 303(b)(1) and 303(b)(2) creates an anomalous situation for an alleged debtor having 12 creditors whose claims are not contingent nor subject to bona fide dispute as to liability or amount. If only two active creditors file an involuntary petition under Section 303(b)(1), the case will be dismissed because the petition was not filed by the minimum of three eligible creditors. See Rothery v. Cunningham (In re Rothery), 211 B.R. 929, 934-35 (9th Cir. BAP 1997), rev'd on other grounds, 143 F.3d 546 (9th Cir. 1998). If one or even all of the creditors file an involuntary petition under Section 303(b)(2), the case will be dismissed because the debtor did not have less than twelve creditors. Compare In re 7H Land & Cattle Corp., 6 B.R. 29 (Bankr. D.Nev. 1980) (eligible claim of one creditor is sufficient when fewer than twelve claim holders was alleged in petitions and not controverted), with In re Zapas, 530 B.R. 560, 567 (Bankr. E.D. N.Y. 2015) (petitioning creditors failed to show that alleged debtor had fewer than 12 creditors and therefore the three creditor minimum under 303(b)(1) applied, rather than the single creditor requirement under 303(b)(2) ). Specific numbers appearing in a statute normally are not considered to be ambiguous and therefore should not be subject to court interpretation even if the surrounding language may have different meanings.

In this instance, EBH did not file an answer asserting the existence of 12 or more creditors having qualifying claims along with a list of such creditors under FRBP 1003(b). This may be the preferred method of challenging the number of petitioning creditors, see 2 Collier on Bankruptcy , supra, ¶ 303.14[9], but arguably nothing prevents the issue from being considered in connection with a motion to dismiss.

Alternatively, an order for relief may be entered against a debtor in a contested proceeding if a custodian was appointed or took possession of substantially all of the debtor's property within 120 days before the involuntary petition was filed. See 11 U.S.C. § 303(h)(2).

Section 303(h)(1) refers to "such debtor's debts." Section 303(h)(1) then imposes conditions on "such debts." "Such debts" are required to be ones that the alleged debtor generally is not paying as they become due. The alleged debtor's failure to pay "such debts" apparently is then excused if those debts are subject to a bona fide dispute as to liability or amount. Because the phrase "such debtor's debts" refers to all of the alleged debtor's obligations, the inquiry required by Section 303(h)(1) apparently extends beyond the claims of the petitioning creditors. Thus, an alleged debtor's undisputed failure to pay a petitioning creditor's debt is not determinative of whether the debtor generally is not paying all of its debts as they become due.

A more unusual situation may occur where a debtor pays all of its debts as they are incurred subject to a reservation of rights. In such circumstances, a contested involuntary petition apparently would not satisfy the threshold requirement of Section 303(h)(1).

Section 303(b)(1) refers to claims that are not the subject of a bona fide dispute while 303(h)(1) refers to debts that are not the subject of a bona fide dispute. Under Section 101(12), the term "debt" means liability on a "claim." Under Section 101(5)(A), the term "claim" means, inter alia, a right to payment, whether or not such right is disputed or undisputed. So under the Bankruptcy Code, a claim or a debt can be a right to payment regardless of whether it is subject to dispute. This broad definition of debt is important to a debtor who voluntarily seeks bankruptcy relief because it maximizes the scope of the bankruptcy discharge. When a debtor is subjected to an involuntary petition, this broad definition also is important because it identifies the type of debt that will prevent a debtor from having its property taken under a bankruptcy court's jurisdiction without the debtor's consent. Thus, when it comes to involuntary bankruptcy cases, the existence of a dispute over the claims of the petitioning creditors raises a due process concern over the nonconsensual taking of a debtor's property.

A bona fide dispute as to any amount of the petitioning creditor's claim also disqualifies the claim under Section 303(b). See In re Timothy Blixseth, Case No. 11-15010-BAM, Order Granting Motion to Dismiss Involuntary Case, Docket No. 528, at 13:11 to 14:2 (Bankr. D. Nev. July 10, 2013). The order in the Blixseth proceeding was appealed to the United States District Court for the District of Nevada ("USDC") and denominated Case No. 2:13-cv-01324-JAD. At the request of the appellant, the USDC certified the matter for direct appeal to the Ninth Circuit on whether the presence of a bona fide dispute as to any amount of a petitioning creditor's claim disqualifies the claim under Section 303(b). See Montana Dept. of Revenue v. Blixseth, 2013 WL 5408668 (D. Nev. Sep. 25, 2013). On June 11, 2014, the circuit court entered an order denying permission for direct appeal, thereby returning the matter to the USDC for disposition. An appellate decision on the dismissal order has not been entered, but the underlying Blixseth bankruptcy proceeding has been reassigned to the above-signed. While the bankruptcy court's prior decision dismissing the involuntary petition in Blixseth remains on appeal, its conclusion that even a dispute as to part of the claim disqualifies the petitioning creditor is supported by many other court decisions. See 2 Collier on Bankruptcy , supra, ¶ 303.11[2] & nn.32, 33. The absence of a Ninth Circuit determination on this issue was observed by the Bankruptcy Appellate Panel for this circuit in 2009, see In re C & C Jewelry Mfg., Inc., 2001 WL 36340326, at *7, and a list of diverging lower court decisions was provided by the USDC. See Montana Dept. of Revenue v. Blixseth, 2013 WL 5408668, at *2-3. The continued absence of a Ninth Circuit decision resolving this issue was more recently noted in In re Clignett, 567 B.R. 583 (Bankr. C.D. Cal. 2017).

Where litigation between parties to a common agreement has gone to a final, non-appealable judgment, the existence of such a judgment may be sufficient to carry a petitioning creditor's initial burden of proving the absence of a bona fide dispute. See, e.g., In re Datacom Systems, at 25:10 to 26:21.

GLAS apparently claims its costs and expenses separately as administrative agent under the PIK Loan. See GLAS Opposition at 10:2-5.

GLAS now represents that of the fifty-five participants in the PIK Loan, twenty-eight of them are not involved in the State Court Litigation. See GLAS Opposition at 4 n.4. The identities of those other twenty-eight PIK Lenders, however, do not appear in the record, and obviously none of them are the Petitioning Creditors specified in the Petition.

EBH merely states that the subject motion is "brought pursuant to Bankruptcy Rules 1011 and 7012." Dismissal Motion at 1:12. FRBP 7012(b) incorporates by reference Civil Rule 12(b) through 12(i).

Civil Rule 12(b)(6) addresses the sufficiency of pleadings in a civil action. Under Civil Rule 7(a), there are only seven pleadings allowed, with no mention of a petition. Under FRBP 1018, however, references in the Civil Rules to a complaint are to be read as a reference to an involuntary bankruptcy petition. In an involuntary proceeding, a motion under Civil Rule 12(b)(6), therefore, asks whether the involuntary petition states a claim for which relief may be granted. At the hearing, counsel for EBH represented that the Dismissal Motion is not brought under Civil Rule 12(b)(6). Instead, counsel asserted that the Petitioning Creditors had failed to make a threshold, prima facie showing of noncontingent claims that are not subject to bona fide dispute under Section 303(b), apparently irrespective of whether there is proof at trial under Section 303(h)(1) that EBH generally is not paying its debts as they become due. That characterization of the argument, however, simply supports the court's focus on whether the Petitioning Creditors have stated a claim for which relief may be granted under Section 303.

As discussed below, the key statutory language applicable to involuntary bankruptcy cases refers to the absence of a "bona fide" dispute concerning the liability or the amount of the petitioning creditor's claim. The summary judgment standard refers to "genuine" disputes of material fact that will preclude entry of judgment as a matter of law. It is not clear whether a "bona fide" dispute is the same as a "genuine" dispute. It seems clear, however, that when there is no genuine factual dispute between a petitioning creditor and an alleged debtor, there can still be a bona fide dispute over liability for the debt or the amount of the debt. Issues of statutory, common law, or contract interpretation fall into the latter category. If a petitioning creditor seeks summary judgment on its involuntary petition, but fails to demonstrate the absence of a genuine dispute of material fact that would require a judgment as a matter of law, is there necessarily a bona fide dispute as to liability or amount that disqualifies the petitioner's claim? If a petitioning creditor seeks summary judgment on its involuntary petition, but its claim depends on an unsettled question of state law, is there necessarily a bona fide dispute as to liability or amount that disqualifies the petitioner's claim? And what happens on summary judgment when parties to a contested involuntary petition give less than complete consent to the bankruptcy court's entry of a final judgment on all matters, including the underlying claims? See discussion at note 77, infra. Is there a bona fide dispute as to liability or amount until such time as a final judgment is entered by an Article III court? See generally 2 Collier on Bankruptcy , supra, ¶ 303.11[3].

Those exhibits include seven separate declarations filed on behalf of the GoldenTree Plaintiffs in the State Court Litigation, to which are attached a variety of transactional documents and correspondence.

That case involved an involuntary petition commenced against South Edge, LLC, Case No. 10-32968-BAM. The February 3, 2011, hearing transcript from the South Edge proceeding ("South Edge Transcript") encompasses the bankruptcy court's oral ruling after trial granting the involuntary petition. The court directed the entry of an order for relief and the appointment of a Chapter 11 trustee. Based on stipulated facts, the court concluded that there were sufficient claims not subject to bona fide dispute, see South Edge Transcript at 46:12-20, and that abstention was not in the best interests of either creditors generally or the petitioning creditors. Id. at 52:4-18. The remnants of the South Edge case have been reassigned to the above-signed.

As previously indicated at note 5, supra, separate "statements" in support of the Petition were filed by GLAS and the ad hoc PIK Lender Group. Like the various exhibits for which judicial notice is requested, these statements also are outside of the Petition and not incorporated by reference. Attachment "A" to the Petition describes the nature of each Petitioning Creditor's claim as "Loan Facility Obligations" without alleging that the obligations are due or that they are not being paid. Absent reference to the separate statements, the Petition arguably contains only a bare recital of the language of Section 303(h)(1), which would not be sufficient to state a claim for relief. Compare Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (satisfaction of Civil Rule 12(b)(6) requires more than mere "labels and conclusions" and a "formulaic recitation of the elements of a cause of action.").

Because FRBP 1011(b) requires an alleged debtor to present defenses to an involuntary petition "in the manner prescribed by Civil Rule 12," and Civil Rule 12(b) requires its enumerated defenses to be presented by motion before an answer is filed, the limitations in Official Form 205 commonly result in a motion to dismiss an involuntary petition under Civil Rule 12(b)(6) being converted to a summary judgment motion governed by Civil Rule 56.

The PIK Loan had a maturity date of March 31, 2017. The GoldenTree Plaintiffs commenced the State Court Litigation on August 26, 2016, i.e., seven months before maturity. The commencement before the maturity date was predicated on an allegation that EBH was insolvent under Section 4.01(g) of the PIK Loan Annex, and the loan had accelerated without notice under Section 4.02 of the Annex. Apparently, after the GoldenTree Action was filed, the GoldenTree Plaintiffs made a written request to Credit Suisse to commence an action to enforce the loan as the predecessor administrative agent, but Credit Suisse did not do so. Because EBH disputes that it was or is insolvent, it maintains that acceleration had not occurred and that wrongful commencement of the GoldenTree Action resulted in a cancellation of its obligation under the PIK Loan Agreement. Those factual and legal contentions were alleged before the State Court in the EBH Counterclaim and in the EBH Complaint. Those contentions apparently were raised before the State Court in connection with motions to dismiss and special motions to dismiss, but remain unresolved. Not satisfied with those rulings, the GoldenTree Parties have pursued interlocutory appeals that are now pending before the Nevada Supreme Court.
For whatever reason, the State Court Litigation was commenced before the PIK Loan matured by its own terms. Substantial litigation activity occurred before the current bankruptcy Petition was filed. As a result, the bankruptcy court does not have a blank slate on which to evaluate the parties' arguments on the underlying merits. As much as any party to this involuntary proceeding may want this bankruptcy court to determine the merits of EBH's theories under New York law, those factual and legal issues are now before the State Court. Moreover, there are no final orders or judgments by the State Court, by default, by summary judgment, or otherwise, nor any appellate rulings from the Nevada Supreme Court, on which this bankruptcy court can or should rely.

The concept of limiting petitioning creditors to those holding claims that are "not subject to a bona fide dispute" was added to Section 303 in 1984. See In re Johnston Hawks, Ltd., 49 B.R. 823, 830 (Bankr.D. Haw. 1985). Prior to that, an eligible petitioning creditor was required to have a "provable claim." Id. at 829. In 2005, Congress added the words "as to liability or amount" to the requirements for the eligible claims of involuntary petitioners under Sections 303(b)(1) and 303(h)(1). There are only two other places in the Bankruptcy Code where the term "bona fide dispute" is used. The term appears in Section 363(f)(4) as a basis for permitting property of a bankruptcy estate to be sold free and clear of an interest asserted by a non-debtor party. It also appears in the definition of "insolvent" under Section 101(32)(C)(i) with respect to a municipality. The 2005 amendments added the words "as to liability or amount" to the requirements for the eligible claims of involuntary petitioners, but made no changes to the only other instances in which the term bona fide dispute is used in the Code.

Any summary judgment motion also should address whether the number of eligible claimants required by Section 303(b)(1) or Section 303(b)(2), see discussion at 719-21, supra, have joined in the involuntary Petition. Additionally, EBH's challenge to GLAS's qualification as a petitioning creditor, see note 46, supra, should be addressed, if at all, by summary judgment.

Apparently, none of the parties to the GoldenTree Action nor the EBH Action filed motions for summary judgment in those proceedings. An order from the State Court granting such a motion in either action would suggest the absence of a genuine dispute of material fact warranting entry of at least partial judgment as a matter of law. But no such motions, much less orders from the State Court, are part of the record. Likewise, there are no final judgments on the merits in favor of any party to the State Court Litigation.

The ubiquitous "totality of the circumstances" approach, see, e.g., discussion at 721-22, supra, is commonly applied in determining whether a court should exercise its discretion to abstain under Section 305(a)(1). For discretionary abstention, the factors typically considered are: (1) economy and efficiency of case administration, (2) the availability of another forum to protect the interests of the parties or the pendency of another proceeding in state court, (3) the necessity for a federal proceeding to achieve a just and equitable solution, (4) the availability of alternative means to equitably distribute assets, (5) whether the debtor and creditors are able to achieve a less expensive arrangement out of court, (6) whether continuation of existing non-federal insolvency proceedings would be less costly and time-consuming, and (7) the purpose for seeking bankruptcy jurisdiction. See Dismissal Motion at 35:18 to 36:4, citing Marciano v. Chapnick (In re Marciano), 459 B.R. 27, 46 (9th Cir. BAP 2011). These factors are non-exclusive and no one factor is more important than another. See In re Marciano, 459 B.R. at 48 ("We disagree that any of the § 305(a) factors can be 'primary' where the determination of relief under § 305(a) is based on the totality of the circumstances.").

As discussed at note 10, supra, LEG is not a creditor of EBH but favors this involuntary proceeding due to LEG's relationship to Eco-Bat. EBH's motion to strike the LEG Statement, see note 11, supra, is the subject of a separate ruling in connection with the Summary Judgment Motion.

It must be remembered that the claims of petitioning creditors cannot be subject to bona fide dispute. If the alleged debtor is adjudicated as bankrupt, then entry of an order for relief shifts the focus for the disposition of all creditor claims to the bankruptcy court. That result may be desirable to the Petitioning Creditors but equally undesirable to creditors who prefer a different venue to have their claims adjudicated. In this instance, the GoldenTree Plaintiffs chose to initiate litigation against EBH in State Court while other participants in the PIK Loan did not. When EBH responded by commencing its own action and asserting counterclaims and third party claims, the GoldenTree Parties chose to initiate anti-SLAPP proceedings. Having failed in their anti-SLAPP motions, the same GoldenTree Parties seek review by the Nevada Supreme Court. Now some of the same GoldenTree Plaintiffs seek entry of a bankruptcy order for relief on an involuntary basis that might wrest control from EBH's management of the defense of the GoldenTree Action as well as the prosecution of the EBH Action. Under these circumstances, the court must carefully consider the interests of the Petitioning Creditors, the non-petitioning creditors, and the alleged debtor.

Whether a final judgment between the GoldenTree Parties and EBH would have issue res judicata effect as to other participants in the PIK Loan also is not before this court. For purposes of claim preclusion in this circuit, however, the requirement of privity as to non-parties has been found in a variety of situations, including "(1) where a non-party has succeeded to a party's interest in property; (2) where a non-party controlled the original suit; (3) where the non-party's interests were adequately represented by a party in the original suit; (4) where there is a "substantial identity" between the party and the non-party; (5) where the non-party had a significant interest and participated in the prior action; (6) where the interests of the non-party and the party are so closely aligned as to be virtually representative; and (7) where there is an express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." F.T.C. v. Garvey, 383 F.3d 891, 897 n.5 (9th Cir. 2004).

GLAS states that it "[C]onsents to the entry of final orders or judgment by this Court with respect to the Motion to Dismiss, the Motion for Summary Judgment, the filing of the involuntary petition, and any order for relief entered pursuant to section 303(h) of the Bankruptcy Code, to the extent it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgment consistent with Article III of the Constitution with respect to such matters. GLAS otherwise reserves its right to withhold consent to this Court's entry of final orders of judgment in all other matters." GLAS Statement at 3:20-26 (emphasis added). The PIK Lender Group states that it "[D]oes consent to entry of final orders of judgment by the Court if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution." PIK Lenders Statement at 2:15-17. EBH states that it "[C]onsents to this Court's jurisdiction for entry of final orders and/or judgments with respect to this Motion and the filing of the Involuntary Petition. EB Holdings respectfully reserves its right to withhold consent to the Court's entry of final orders and/or judgments in all other matters." Dismissal Motion at 5:2-5 (emphasis added). The consent of the PIK Lenders appears to be unrestricted, while the consent of GLAS and EBH is limited. It remains unclear whether the parties consent to the bankruptcy court entering a final order as to any aspects of the merits of the underlying claims amongst the parties.

As previously discussed at 715, supra, the Third Amended Complaint includes an allegation that a maturity default has occurred in connection with the breach of contract cause of action alleged by the GoldenTree Plaintiffs.

As previously discussed at note 13, the PIK Lenders filed a Clarification Notice attempting to update the court on the status of the State Court Litigation. Also as previously discussed, this court entered an order striking that Notice without prejudice to the parties requesting permission to file additional declarations attesting to the current status of the State Court Litigation. None of the parties have done so. As it now stands, the trial scheduling order entered by the State Court indicates that a jury trial in the coordinated actions will commence as early as April 16, 2018.

The PIK Lenders allege that the principal of EBH has engaged in a variety of self-dealing, see PIK Lender Statement at 6:1 to 12:5, and will be enlightened by the fiduciary duties of a Chapter 11 debtor in possession "or be replaced." Id. at 12:6-17. Because EBH is admittedly a holding company with no employees or business operations, see note 44, supra, it begs the question of why any creditor would want to put EBH into Chapter 11 for any purpose other than divest current management of control over the State Court Litigation or of the equity interests in Eco-Bat.

A Chapter 11 trustee, like a Chapter 7 trustee, can also exercise the powers to avoid fraudulent transfers under both bankruptcy law, see 11 U.S.C. § 548, and under applicable state law. See 11 U.S.C. § 544(b). In this instance, the GoldenTree Plaintiffs already seek to avoid various alleged fraudulent transfers under Nevada law. See discussion at 712 & notes 25 and 26, supra. In this respect, bankruptcy does not offer a unique remedy to address the alleged wrongdoing by the principals and affiliates of EBH.

A bankruptcy court's assertion of jurisdiction over parties without their consent is perhaps at its farthest limit when it enters an order substantively consolidating a non-debtor entity with an existing debtor. See, e.g., Clark's Crystal Springs Ranch, LLC v. Gugino (In re Clark), 692 Fed.Appx. 946 (9th Cir. 2017) (Chapter 7 individual debtor's estate substantively consolidated with separate limited liability company and separate family trust). Substantive consolidation of existing bankruptcy estates can be contentious, but is comparatively straightforward. See, e.g., In re R & S St. Rose Lenders, LLC, 553 B.R. 814 (Bankr. D. Nev. 2016) (denial of substantive consolidation of separate voluntary Chapter 11 proceedings). Substantive consolidation of a debtor that has not subjected itself to bankruptcy jurisdiction, however, arguably is the equivalent of an involuntary proceeding without the protections of Section 303(b) and Section 303(h).